### ABBY M. KINMONTH vs. WILLIAM BRIGHAM & another.

If, under a bequest of the residue of the testator's property to trustees, with a general direction to keep the same safely invested, and distribute the income to certain persons for life, with remainder over, an investment made by the testator in a limited partnership has been allowed by the trustees to continue, the profits arising therefrom after his death are not to be treated exclusively as income; but so much thereof is to be treated and invested as principal, as, if received and invested at the testator's death, would amount, with interest, and making annual rests, to the profits actually received, at the time they were received, and the residue is to be distributed as income.

An intention on the part of a testator that an investment made by him in a limited partnership

should be continued after his death, and the share of the profits belonging to his estate should be distributed as income, under a general direction that his property should be kept safely invested, and the income thereof distributed to certain persons for life, with remainder over, will not be inferred from a clause in his will directing his executors not to avail themselves, unless they should see fit, of a provision in the partnership articles, authorizing him or his representatives to assume the management of the business, in case of the death of either of the general partners.

BILL IN EQUITY, brought by the widow of David M. Kinmonth, against the trustees named in her husband's will, praying that they might be ordered to pay over to her one third part of the amount received by them for the share of his estate in the profits of a limited partnership.

The material portions of the will are copied in the margin ; * and the facts of the case are sufficiently stated in the opinion.

* " *Sixth.* All the rest and residue of my estate, of every description, I give and bequeath to the trustees hereinafter mentioned, but in trust, for the uses and purposes as hereinafter set forth. The said trustees shall carefully invest all of said estate, and shall keep the said property safely invested, and, as often as once in each year, divide the net income thereof into three parts, one of which shall be seven hundred and fifty dollars less than either of the other two ; the smaller of which shall be paid over to my wife, on her own receipt, and free from the control of any person, during her natural life. The other two portions shall be set apart for my two children, and each portion kept separate from the other ; and so much of the same as shall be necessary for their proper education and support shall be appropriated for that purpose ; and the balance which shall remain shall be invested as a separate fund for each child, which may accumulate, and the income thereof shall be added to said fund, unless such income shall be needed for the support and education of my said children. At the decease of my said wife, the income provided for her shall go to my children, in equal portions, but on the terms and conditions herein provided for as to other property. And it is further provided that, whenever either of my said children shall arrive at the age of twenty-one years, the whole of the income belonging to him or her may be paid over to him or her, including the income on the fund, if any, which shall have accumulated from previous incomes ; and the same shall be paid to my daughter after she shall become twenty-one years of age, during her natural life, on her own receipt, and free from all control of any husband. When my said son shall have arrived at the age of twenty-five years, and if he shall desire to do business, my said trustees are authorized, if they shall deem it expedient, to loan him, on his own note, any sum not exceeding one third of the amount which he will probably be entitled to ; and such loan shall be a full protection to said trustees. And, when my son shall have arrived at the age of thirty-

Kinmonth *v.* Brigham & another.

*B. F. Thomas & R. Olney,* for the plaintiff. The plaintiff is entitled to enjoy *in specie* one third of the entire income (deducting $750,) of the residuary estate, including the profits of the limited partnership. There is no express direction for the conversion of his interest in the partnership. The direction in the will in reference to the investment of the property is general and formal, and adds nothing to the duties required by law of the trustees; and it does not apply to the interest in the partnership. The will is to be construed as a whole; and the eighth article contains an explicit recognition of the testator's investment in the partnership, and shows his understanding and intention that the same should continue after his death, until the

---

years, said trustees shall pay over to him, for his own use and benefit, all his portion of my said estate which shall then not be required to create or produce the income herein provided for my wife and daughter.

"And said trustees may, at any time, divide said fund into as many parts as there are persons entitled to the income thereof, and in the proportion to which they are entitled to said income; and such division, as between the parties entitled to such income, shall be final and conclusive; and each individual shall thereafter have the income of such portion of property as shall be set apart for his or her benefit. But in case of the death of either of my said children, before he or she shall have arrived at the age of twenty-one years, without issue, then the provision herein made for the deceased child shall go and belong to the other; but, if said deceased child shall leave lawful issue, then the provision herein made for the parent shall go to the benefit of such issue, by the right of representation. And on the decease of either of my said children after they shall have arrived at the age of twenty-one years, then the portions of property belonging to such child, as indicated by the income as before set forth, shall go to his or her heirs at law, or to such person or persons as he or she may by any last will or testament, or any paper executed in the presence of three witnesses, order and direct.

"*Seventh.* It is my earnest request, that my wife shall act as the guardian of my children, unless the majority of my trustees shall wish some other person.

"*Eighth.* And whereas, by the latter part of the eleventh article of the contract between myself and partners, provision is made for the death of either of the general partners; now, in such an event, my direction is, that my executors shall not avail themselves of that provision, unless they see fit.

"*Ninth.* I hereby nominate and appoint William Brigham and John B. Leach, of Boston, and George Greig, of Newton, to be executors of and trustees under this will."

termination of the partnership. See *Skirving* v. *Williams*, 24 Beav. 275, and cases cited; *Marshall* v. *Bremner*, 2 Smale & Gif. 237; *Hind* v. *Selby*, 22 Beav. 373; *Collins* v. *Collins*, 2 Myl. & K. 703; *Bowden* v. *Bowden*, 17 Sim. 65.

The rule of *Howe* v. *Dartmouth*, 7 Ves. 137, and especially in its application in *Fearns* v. *Young*, 9 Ves. 549, has not been adopted in this commonwealth, or, it is believed, in this country; and the application of it to our trust funds would occasion the greatest practical inconvenience. Even in England, the soundness of the rule is questioned, and the courts have laid hold of the slightest circumstances to take cases out of its operation. *Blann* v. *Bell*, 5 De G. & Sm. 658, and cases cited. *Hinves* v. *Hinves*, 3 Hare, 609, and cases cited. *Prendergast* v. *Prendergast*, 3 H. L. Cas. (N. S.) 195, and cases cited. *Cotton* v. *Cotton*, 14 Jur. 950. *Boys* v. *Boys*, 28 Beav. 436. *Crowe* v. *Crisford*, 17 Beav. 507. If the will directs or intends the conversion or division of the whole property, or of the perishable property, at some period after the testator's death, there will be no conversion at his death. So if it manifests an intention that any one portion of the residue shall be enjoyed *in specie*, this will preclude conversion of the other portions also. The circumstance that perishable property has been disposed of in the same residuary clause with land or other imperishable property, has been deemed sufficient to prevent conversion. See cases above referred to.

The true rule is, that the question of the conversion of residuary estate, as between tenant for life and remainder-man, depends wholly upon the testator's intention; which intention is not controlled by any rigid *prima facie* rule, but is to be determined, as in other cases, from a consideration of the entire will. See cases above referred to; and *Cafe* v. *Bent*, 5 Hare, 24; *Hubbard* v. *Young*, 10 Beav. 203, and cases cited; *Neville* v. *Fortescue*, 16 Sim. 333; *Harvey* v. *Harvey*, 5 Beav. 134. The rule of *Howe* v. *Dartmouth* is not well founded in principle. There being a bequest of a residue to one for life, and then over to another in fee, without more, the rule assumes an intention on the part of the testator that the successive takers should

enjoy precisely the same thing. Such an intention is not expressed nor necessarily implied by such provisions in a will. On the contrary, the presumption is, that a testator, in disposing of his property, has in view its actual quality and *status*, and therefore contemplates any inequality of benefit among the objects of his bounty which is the result of that quality and *status ;* and that, as between tenant for life and remainder-man, the testator meant to prefer the former. *Lovering* v. *Minot*, 9 Cush. 151, 157.

*W. G. Russell*, (*W. Brigham* with him,) for the defendants. It is not denied that the plaintiff is, in some form, entitled to some income upon that portion of the testator's estate which was invested in the partnership ; or that such income, when its amount shall have been ascertained, will be payable from the date of his death.

It is the rule, well established by the English authorities, that upon a general residuary bequest to one for life, with remainder over, when the residue consists in part of property of a wearing or wasting nature, or is not in such a state of investment as ought to be recognized or allowed to be continued by the court, such property must be converted into a proper state of investment; and the tenant for life will be entitled, not to the actual annual produce of such property, but to interest from the death of the testator at a fixed rate upon its estimated or subsequently ascertained value. If the conversion of such property is not or cannot be made within the year from the testator's death, it will nevertheless be considered as having been made at the end of the year, whenever the proceeds of such property shall be realized ; and interest upon the fund, as valued at that date, shall be allowed to the tenant for life from the testator's death. 2 Williams on Executors, (4th Amer. ed.) 1193, 1196, and cases cited. 2 Roper on Leg. (2d Amer. ed.) 1321, 1325, and cases cited. 2 Kent Com. (6th ed.) 353, 354. *Howe* v. *Dartmouth*, 7 Ves. 137. *Fearns* v. *Young*, 9 Ves. 549. *Morgan* v. *Morgan*, 14 Beav. 72. *Meyer* v. *Simonson*, 5 De G. & Sm. 723. This rule has been recognized in New York. *Covenhoven* v. *Shaler*, 2 Paige, 122, 132. *Williamson* v. *Williamson*, 6 Paige, 298

*Cairns* v. *Chaubert*, 9 Paige, 162. This rule is most strictly applied, where the residue is expressly directed to be invested, and the income paid to tenants for life, with remainder over. *Taylor* v. *Clark*, 1 Hare, 161, and cases cited. It applies to the case of a residuary bequest, including an interest in a partner ship. See cases cited above. An interest in a special partnership is peculiarly of a wasting description.

HOAR, J. This is a bill in equity by which the widow of David M. Kinmonth seeks to enforce against the executors and trustees of her deceased husband a trust created by his will.

The material facts presented by the bill and answers are these. The testator, who died February 22, 1860, by his will, after certain specific legacies therein set forth, bequeathed the whole residue of his estate to trustees, in trust to invest the same carefully, and to keep the same safely invested, and as often as once in each year, to divide the net income thereof into three parts, one of which they should pay over to his wife, during her natural life. The same persons were named as executors and trustees.

A part of his estate was his interest in a limited partnership, which was formed September 4, 1858, to continue for four years; and to which he had contributed $50,000, as special partner. By the articles of partnership he was to be entitled to one half of the profits, and might withdraw the same semiannually ; any balance of profits left in the business was to be on interest ; he was to bear one half the losses, to the extent of his capital invested, and make good the same semi-annually ; and at the end of the term the general partners were to take the stock, fixtures and goodwill, and to pay over to him the capital which he had contributed, and the net profits then due. It was also provided that if either of the general partners should violate any of the partnership covenants, the testator and his representatives should have the right to dissolve it, and take possession of the stock, stand, property and business, and carry on the business on his or their own account; and that in case of the death of either of the general partners within two years, the partnership should continue till the time of the next semi-annual accounting,

and the testator and his representatives should then have the same right to take the property and business. By the will, the executors were authorized not to avail themselves of this last provision, unless they should see fit.

The business had been established and carried on by the testator, previous to the formation of the special partnership. The special partnership has proved extremely profitable, the testator having received a large sum as profits before his death; and the executors have received as profits and capital, $158,558.44 since their appointment.

The plaintiff seeks to compel the executors to distribute the sum of $108,558.44, as the net income of the estate.

The case has been most ably and thoroughly discussed by the counsel for the respective parties, upon principle and authority, and it will be sufficient to state briefly the result at which we have arrived.

The English rule is perfectly well settled, that where the residue of personal property is left without specific description, and is given in succession to a tenant for life and remainderman, it shall be invested in a permanent fund, so that the successive takers shall enjoy it in the same condition, and with the same productive capacity. The reason of the rule is the obvious and just consideration, that the intention of the testator is expressly declared to give the enjoyment of the same fund to the successive takers; and that this can only be done by fixing the value of the fund at the time when the right of the first taker to its use commences. The leading case is *Howe* v. *Dartmouth*, 7 Ves. 137. This was followed by *Fearns* v. *Young*, 9 Ves. 549, where the doctrine was applied to the case of money invested in a partnership at the death of the testator. Many of the subsequent cases are collected and reviewed in 2 White & Tudor's Lead. Cas. in Equity, (Amer. ed.) 278 *& seq.*, in the notes to *Howe* v. *Dartmouth;* and these, with others, have been carefully presented in the argument of this cause.

In the application of this rule, the English courts of chancery by a long course of decisions, have determined that an investment in the three per cents. is to be generally regarded as the

only investment which will be sanctioned or directed by the court as safe and permanent; though, in a few cases, a ref-erence has been made to a master to find whether an existing security at a higher rate of interest is not absolutely safe, and more beneficial to all the parties. *Caldecott* v. *Caldecott*, 1 Y. & Coll. 312, 737.

But wherever property is specifically bequeathed, or where the intention can be gathered from the whole will that it should be enjoyed *in specie*, the rule does not apply.

And the rule itself, so far as it requires an investment in pub-lic securities, has never been adopted in this commonwealth. As was said by Chief Justice Shaw, in *Lovell* v. *Minot*, 20 Pick. 119, " there are no public securities in this country, which would answer these requisitions of an English court of equity." The only rule which has been recognized by this court as obligatory upon a trustee in making investments is, that he shall act with good faith, and in the exercise of a sound discretion.

In *Lovell* v. *Minot*, an investment by a guardian in the prom-issory note of a person in good credit, secured by a pledge of stock in a manufacturing company which was then selling in the market at above its par value, at the rate of about three quarters of its par value, was held to be made with sound dis-cretion.

In *Harvard College* v. *Amory*, 9 Pick. 446, an investment was made by trustees under a will, of a fund, the profits and income of which were to be paid to the testator's widow for her life, and after her decease the fund to be distributed. It was held that the trustees were authorized to invest in the capital stock of an incorporated manufacturing company, and of an incor-porated insurance company; and that the actual profits and dividends received from such investment were rightly paid to the widow. The will itself expressly empowered the trustees to invest the fund " in safe and productive stock, either in the pub-lic funds, bank shares or other stock, according to their best judgment and discretion;" and enjoined attention " in the choice of funds, and in the punctual collection of the dividends

interest and profits thereof." A large part of the testator's prop-erty consisted of manufacturing and insurance stock.

But although in this commonwealth there are no investments regarded as so absolutely secure as to make a choice of them obligatory upon trustees, and in all cases a considerable lati-tude is allowed, yet it has never been held that trustees for suc-cessive takers were at liberty to disregard the security of the capital, in order to increase the income. Nor, where property is of a wasting nature, is an investment in it consistent with their duty, in the absence of specific directions in the creation of the trust. They are equally bound to preserve the capital of the fund for the benefit of the remainder-man, and to secure the usual rate of income upon safe investments for the tenant for life; and to use a sound discretion in reference to each of these objects. If there is no specific direction, and they are charged merely with the general duty to invest, they cannot postpone the yielding of income for the increase of the capital, nor select a wasting or hazardous investment for the sake of greater pres-ent profit. And the rule is the same in regard to property which comes to the trustees from the testator, not specifically be-queathed, as it is in regard to making new investments. If the investment is not such as this court would sustain them in making, it should not be allowed to continue, but should be converted. Its value as a fund should be ascertained as of the time when the enjoyment of the income of it is to commence; and the fund treated as if it had been at that time converted into such an investment as the court would sanction. In de-termining this value, it is not always practicable to settle it with exactness, until the conversion is actually made; especially in cases where the capital is more or less at risk. The most just rule seems to be, where reasonable care and prudence have been used by the trustees in making the conversion, to treat the whole sums received from time to time, until converted, as parts of the estate; and to find what sum at the time to which the conversion has reference would be equivalent to the amount act-ually received, at the time it was received; and to treat that sum as capital, and the remainder as income. Thus if the residue

consisted of notes or obligations payable at a future day, without interest; and the tenant for life were entitled to the income from the death of the testator; when the money was received, so much of it only would be treated as capital, as, if invested at the death of the testator, would have produced the whole amount at the time the notes or obligations were payable; and the rest would be income. If the property were embarked in a commercial adventure, or were in the shape of a bottomry bond, or other hazardous condition, the trustees would be required to use suitable skill and caution in collecting whatever could be obtained from it, and the value of whatever was or ought to have been realized from it would be fixed as of the time of the testator's death, and treated as capital. And on the other hand, where the property is of a wasting nature, as terminable annuities, leases, or the like, the value of the whole investment at the testator's death should be ascertained, and what should be regarded as income be computed upon that basis.

In applying the principles which we have stated to the case at bar, it is conceded that the income to which the plaintiff is entitled should commence and be computed from the death of her husband. We are of opinion that there is nothing in the will which indicates an intention that she should enjoy the income of any particular property which the testator possessed, *in specie,* but the whole residue was to be alike subject to investment by the trustees. The reference to the special partnership is only in connection with instructions to the executors as to their duty in a certain contingency. In the next place, we cannot regard the investment by a special partner in a trading partnership as such an investment as the court would sanction. It is obviously difficult, in this case, to determine what was the value of the investment at the testator's decease, by any other mode than a computation based upon the whole product ultimately realized from it. It included not merely the fifty thousand dollars contributed by the testator to the enterprise, but the interest in an established and lucrative business, with the right to the services, for a fixed period, of all the general partners. The

whole was at risk until the partnership concerns were all settled It somewhat resembles property invested in a ship, or upon a whaling voyage, or long commercial adventure; from which returns are received from time to time, but with liability to losses which may require the whole to be refunded; and where the successful progress of the enterprise so far may have enhanced the value of the property far beyond its original cost. We think such returns could not be justly treated, between tenant for life and remainder-man, as the income of an investment.

We think, therefore, that upon a just construction of the will, equity will require that the profits received by the executors from the special partnership should not be regarded or treated exclusively as income, but that they be treated, when received from time to time, as property belonging to the estate, a part of which is to be invested as capital, and a part distributed as income; which parts are to be ascertained by finding what sum, if received at the death of the testator, would amount with interest at six per cent., and making annual rests, to the sum actually received, at the time it was received; and that the sum so found should be invested as principal, and the remainder distributed as income.

The costs of the litigation are to be paid from the whole fund.

*Decree accordingly.*