(Decided 14th March, 1894.)

---

GEORGE Y. WETHERED, JR., *vs.* THE SAFE DEPOSIT AND TRUST COMPANY OF BALTIMORE, Trustee. ELIZABETH E. OWINGS, and MARY L. OWINGS, by WILLIAM R. BREWER, their Guardian *ad litem, vs.* SAME.

*Construction of Will—Right of Life tenants to Income— Payment of Debts of Testator and Costs of Adminis- tration.*

Where a testator gave all the rest and residue of his estate, of every kind, to one, in trust, to divide all the net income of his whole estate into five equal parts, and semi-annually to pay one portion to each of five named persons for life, with remainder over, the life tenants are entitled to the whole net income from the residue of the estate from the death of the testator, and no portion of such income is liable for his debts or the costs of administration, the same being payable out of the corpus of the estate.

APPEALS from the Circuit Court No. 2 of Baltimore City.

A bill was filed by the Safe Deposit and Trust Company of Baltimore, as trustee under the will of George Y. Weth- ered, asking the Court to assume jurisdiction in the admin-

istration of the trust, and to construe and declare the true meaning of the following clauses in said will:

"I give, devise and bequeath (my sister Lewina Wethered being already provided for) all the rest and residue of my estate, of every kind, and wheresoever situated, unto the Safe Deposit and Trust Company of Baltimore City, to hold the same, nevertheless, in trust, for the following uses, purposes, and trusts, viz.,

"First. To divide all the net income of my whole estate into five (5) equal parts; and semi-annually to pay one of said portions to each of the following persons, during the lifetime of said persons, viz., One-fifth part to Elizabeth Wethered, widow of my brother Samuel Wethered, and one-fifth part to each of her four children, viz., George Y. Wethered, Jr., Mary Wethered, Hugh Wethered and Mrs. Samuel S. Owings.

"Secondly. In the event of the death of any of the above named five persons, then, in trust, to pay said one-fifth of the income herein devised, to the survivor or survivors, *pari passu.*

"Thirdly. In the event of the death of George Y. Wethered, Jr., Mary Wethered, Hugh Wethered and Mrs. Samuel S. Owings, or any one of them, leaving issue of his or her body, then, in trust, to pay said income to the said issue, *pari passu, per stirpes* and not *per capita,* until the arrival at the age of twenty-one years, of said issue, and then, in trust, to pay over the principal and accrued interest of said estate, to said issue, free from the operation of this trust."

The testator died in August, 1892. Hugh Wethered died without issue before the death of the testator. The remaining life tenants were living, and one of them, Eliza Y. Owings (called Mrs. Samuel S. Owings in the bill), was married and had two infant children, Elizabeth E. Owings and Mary L. Owings, who are defendants in the case. The lower Court (WICKES, J.,) decreed that by the true intent

and construction of the last will and testament of George Y. Wethered, in these proceedings mentioned, Hugh Wethered having died without issue and intestate in the lifetime of the testator, the plaintiff took the absolute legal estate in the whole of the rest and residue of the estate of the testator, and the defendants, Elizabeth Wethered, Mary Wethered, George Y. Wethered, Jr., and Eliza Y. Owings, each took equitable estates for the terms of their lives, respectively, in undivided fifths as their original portions, and also took in equal shares by survivorship the undivided equitable fifths intended for Hugh Wethered, and that they thus, at the death of the testator, each took an undivided fourth in equitable estate for the terms of their lives, respectively; that the plaintiff took said legal estate in trust to pay the net income in equal shares to the said above named four defendants for the terms of their lives, respectively; and upon the death of the said Elizabeth Wethered and of any others of the above named four defendants, in trust to pay also the income which had been paid to the decedent, to the survivors or survivor, equally, unless said Mary Wethered, George Y. Wethered, Jr., or Eliza Y. Owings shall have died leaving issue, and if there be such issue, then to pay the said last mentioned income to the survivors or survivor for life, and to the issue of the deceased defendant *per stirpes* and equally; and that upon the death of any or all of the three last named defendants leaving issue, the income which would have been payable to the decedent, as well from the share to which he or she was entitled at the death of the testator, or any accretions thereto by said survivorship of the decedent, or of the issue afterwards, will be payable to the issue of the decedent until the arrival of each of said issue at the age of twenty-one years, and then it will be the duty of the plaintiff to pay over and deliver to such issue as they arrive at said age the proportionate part of the corpus of the estate, freed from the trusts, as the absolute estate

of such issue; and if any of such issue shall die before reaching said age, then to pay over and deliver the proportionate part of the issue so dying in said corpus to his or her personal representatives in absolute estate, and that there is an intestacy as to the remainder in the said estate, in case the said Mary Wethered, George Y. Wethered, Jr., and Eliza Y. Owings shall all die without issue.

And further, that by the true construction of said last will and testament, the whole net income from the said rest and residue became payable to the said equitable life tenants from the time of the death of the testator, it appearing to the Court that there are no circumstances of unusual difficulty in the administration of the estate which would require that the income should be applied to the payment of expenses of administration.

And further, that the defendant, Mary Wethered, has offered no evidence sufficient to establish a perfected gift of the furniture mentioned in the proceedings, and the same constituted a part of the estate of the testator.

From this decree the appeals in this case were taken.

The cause was argued before ROBINSON, C.J., FOWLER, ROBERTS, McSHERRY, BOYD and BRISCOE, J.

*W. Cabell Bruce*, and *William A. Fisher*, for the appellant, George Y. Wethered, Jr.

*Charles McHenry Howard*, (with whom was *Richard M. Venable*, on the brief,) for the appellants, Elizabeth E. Owings and Mary L. Owings, infants.

No appearance for the appellee.

BOYD, J., delivered the opinion of the Court.

The Safe Deposit and Trust Company of Baltimore, as

trustee under the will of George Y. Wethered, filed its bill of complaint against Elizabeth Wethered and others interested, asking the Court to assume jurisdiction in the administration of the trust, and to construe and declare the true meaning of several clauses and parts of said will.

The Court below construed the will, and from the decree George Y. Wethered, Jr., who is one of several tenants for life in the residue of the estate, and two infant children of Mrs. Owings, who are interested in the same as remainder-men, have appealed.

One question involved in the decision below was whether Mary Wethered was the owner of certain furniture mentioned in the proceedings, which she claimed was given to her by the testator in his lifetime. The Court decided adversely to her claim, but as she has not appealed, that controversy is not before us.

The appeal of the Owings children presents an interesting question, which it is necessary for us to pass upon, viz., Are the life tenants entitled to the whole net income from the residue of the estate from the death of the testator, or is said income, or any part thereof, liable for the debts of the testator and costs of administration?

The general principles governing the rights of the several kinds of legatees are quite well established; but, as is the case with most litigation arising from the construction of wills, there is an apparent conflict between some of the authorities on the question now before us, which, however, can in a great measure be reconciled by a careful examination of the facts.

A specific legacy ordinarily entitles the legatee to income, profits or proceeds of the article from the death of the testator, because such legacies " are considered as separated from the general estate and appropriated at the time of the death of the testator."

General legacies bear interest from the time the principal is payable, and, when the testator fixes no time for pay-

ment, interest is usually allowed from one year after his death, because the executor has that time to ascertain the indebtedness, to reduce the estate into possession, &c., and the Courts presume that such has been done, and fix one year as the time when general legacies are payable. There are, of course, well known exceptions to this rule, but it is unnecessary for us to refer to them.

Annuities given by wills ordinarily commence from the testator's death, and according to most authorities, a bequest of the residue of the personal estate for life, with the remainder over, generally entitles the life tenant to the income, commencing with the death of the testator; certainly as between the life tenant and remainder-man.

Of course, the income from all the personal estate is as liable for the debts of the decedent as the principal, and must be so applied, if necessary; but when the estate is ample to pay all debts, expenses of administration and legacies, and there still remains a considerable residue, the income of which is, by the terms of the will, to be paid to life tenants, and then the corpus or principal to go to remainder-men, the above principles will apply, unless the testator has provided otherwise, or there be some peculiar circumstances which would change the general rule. If the intention of the testator can be gathered from the will, his wishes should be gratified in these matters as well as others, unless in conflict with some well established rules of law. In ascertaining the intention of a testator, Courts must consider all the circumstances properly before them, and must not place such construction upon the provisions of the will as will do injustice to any of the parties, or would be contrary to what a reasonable man would likely intend, unless the terms of the will be so clear as to admit of no doubt as to what the testator did intend.

In the case before us the record shows that the testator's estate consisted of personal property appraised at $31,-

614.50 and $2025.59 cash in bank. Nearly $22,000 of the inventory consisted of interest bearing bonds, and the remainder, with the exception of furniture valued at $487.50, and a watch and wearing apparel valued at $28, was invested in shares of stock of two corporations. Three of the bonds were of the denomination of $100, three of $500, and the remainder of $1000. The testator directed the executors, after the payment of funeral expenses and just debts, to pay the cemetery authorities one hundred dollars for the charge of keeping his lot in the cemetery in order. He then directed them " to erect and pay for, *out of my estate*," head and foot stones at his grave. similar to those at his wife's grave, and gave his watch and wearing apparel to his nephew, George Y. Wethered, Jr.

He then gave all the rest and residue of his estate of every kind, wherever situated, to the appellee in trust for the following uses, purposes and trusts: " First. To divide all the net income of my whole estate into five (5) equal parts, and semi-annually to pay one of said portions to each of the following persons, during the lifetime of said persons, viz., One-fifth part to Elizabeth Wethered, widow of my brother Samuel Wethered, and one-fifth part to each of her four children," naming them. He then directed what should be done in the event of the death of the life tenants.

There is nothing in the record to show what debts, if any, the testator owed when he died. Nor is there anything to show the amount of the expenses connected with the administration. The administration accounts are not in the record, although apparently filed with the bill. The reference to them in the record simply gives the date they were filed, and the fact that the balance was transferred to the appellee without stating what that balance was.

There were, of course, funeral expenses and costs of administration, in addition to the hundred dollars to be paid to the authorities of Greenmount Cemetery, and the

costs of the stones for testator's grave. The testator directed that the latter should be paid "out of my estate." If he had intended that the income to be derived from the residue of his estate should be used in the payment of them, would he not have said, "out of the income of my estate," or something to that effect? Again, he directed the trustee "to divide *all* the net income of my *whole estate* into five (5) equal parts, and *semi-annually* to pay one of said portions to each of the following persons during the lifetime of said persons," &c. When he directed the trustees to divide *all* the net income of his *whole estate*, he evidently did not mean *part* of the net income, but must be presumed to have meant what he said in plain language. So far as his will indicates it, we think his intention was not to charge the life tenants with the whole or part of the costs of administration, funeral expenses and other charges named, for that is what it practically amounts to if the income on the residue for a year is to be so used; but knowing that his estate was of such a character as to be easily settled, and that as much as necessary could be used to pay these charges without disturbing the investments of the rest of the estate, he evidently contemplated that they would be paid out of the cash on hand and by sale of such bonds or stocks as might be necessary. The funeral expenses could with safety be paid at once under sect. 5, Art. 93 of the Code, and the debts, if any, at the end of six months under section 109 of that Article.

There are not only no difficulties disclosed by the record in the way of a speedy and easy settlement of the estate, but, on the contrary, it was an unusually simple one to settle. Under such circumstances we do not think it would be equitable to call upon the life tenants, or the income that would otherwise go to them, to pay the expenses of administration or other charges to be paid. It only remains

to see if the former decisions of this Court stand in the way of such a conclusion. We think not.

In *Evans et al. vs. Iglehart et al.*, 6 *Gill & J.*, 192, the Court after deciding " that the increase and income resulting from personal property specifically bequeathed, where the assets are abundant to pay debts and legacies, enure to the benefit of the specific legatees, and form no part of the general residue," said: " We can discover no solid ground of distinction between the rights of a legatee for life to the increase and profits of a specific legacy, from the testator's death, and the rights of a similar legatee of a general residue to like interests from the same period."

In *Merryman, Ex'r vs. Long*, 49 *Md.*, 545, this Court decided that the income received by the executor during the first year after the death of 'the testator should be applied to the payment of debts and expenses of administration, but in that case the property consisted chiefly of improved leasehold estate, appraised at $7335.

It was necessary either to apply the income or to sell the leasehold property. Under those circumstances the Court thought it would not be equitable to require a sale of the leasehold property to pay the debts and costs. The Court was of the opinion that no real injury was done the life tenant by thus relieving the corpus of the estate of the indebtedness and thereby save it from a sale. It can readily be seen how, under such circumstances, it might work a great hardship on remainder-men to sell the property. They would not only lose so much of the proceeds as would be necessary to pay the debts and costs, but a sale would probably result in having a much less satisfactory investment of the surplus.

Whilst leasehold property is personalty, and as such devolves on the executor, and is held by him subject to the rights of creditors, yet so far as the safety of the investment is concerned, it resembles real property; and a remainder-man is generally better protected with an

11                    v. 79.

interest in productive real estate than he would be if his interest was simply in stocks, bonds or personalty of that character.

A Court of equity might well hesitate to require the sale of *the whole corpus* of other kinds of personalty to pay debts and costs, when the use of the income for a year would avoid the necessity of a sale which might jeopardize the surplus of the principal in a worse investment. But there was nothing in the will of Long to cause the Court to conclude that he intended the property to be sold, or did not intend the income to be applied, if necessary, to the debts, &c. The terms of the portion of the will quoted in the opinion of the Court would seem to indicate the contrary. He bequeathed the property in trust for the use of his wife, " so that she be permitted and suffered to hold and enjoy the same property and estate, and the rents, issues, interest and income thereof, after payment of all *groundrents,*taxes, insurance, repairs and expenses upon said property * * * * and after her death in trust for the testator's grandchildren." The circumstances of that case differ very materially from the one we are now considering.

In *Abell vs. Abell*, 75 *Md.*, 64, this Court concurred in the conclusion of the Court below, " that the daughters, the devisees and legatees for life, are entitled to the net income, without any deduction from the payment of costs of administration, debts and legacies," for the reasons stated in the opinion of the learned Judge of the Circuit Court. In that opinion the Judge said: " As to the circumstances of the estate, they present a striking contrast to those disclosed in *Merryman, Ex'r vs. Long,* 49 *Md.*, 546, where a reasonable necessity existed for the application of the first year's income to the payment of debts."

What was said in the *Abell* case applies equally well to this, and we think that the testator's intention, as gathered from his will, and the nature and character of

his estate, fully justify us in distinguishing this case from *Merryman vs. Long*, and deciding, as we do, that the income from the residue of the estate of Mr. Wethered for the first year after his death is not to be applied to the payment of debts, funeral expenses, costs of administration, the $100 left to the Cemetery Association, or the cost of the grave stones, but they should be paid out of the cash on hand, and the proceeds of sales of so much of the principal as may be necessary to be sold for those purposes.

Of course the income on so much of the principal as must be sold and used for the purposes herein stated, will not be payable to the life tenants as the residue of the estate is lessened to the amount of the principal so used.

The case of *Lovering vs. Minot and others*, 9 *Cush.*, 156, is in accord with our conclusions. See also *Green vs. Green*, 30 *N. J. Eq.*, 451 (affirmed in *Green vs. Blackwell*, 32 *N. J. Eq.*, 768); *Townsend's Appeal*, 106 *Pa. St.*, 268; *Baily, Petitioner*, 13 *R. I.*, 560; *Pell vs. Mercer*, 14 *R. I.*, 432; *Custis and wife vs. Adkins Adm'r*, 1 *Houston*, 382; 2 *Wms. on Executors*, [1391], [1393] *and notes*, (*6th Am'n Ed.*).

Several of those cases show that the fact that the property is left to trustees instead of to the life tenants directly, makes no difference. The *Abell* case is also in point in that respect.

We are also asked to construe the will in reference to several other matters that may hereafter arise. This prayer is based on the provisions of the Code of Public General Laws embraced in sections 26 to 31 of Article 16, sub-title " Declaratory Decrees."

The case was very ably argued, and the Court would be greatly aided in reaching a proper construction of the will both by the oral arguments and the briefs filed presenting the views of the respective counsel. But we have not been convinced that this is a proper case to exercise the discretion vested in us by the statute above referred to, by pass-

ing upon the questions which have not yet arisen,—some of which may never arise. As was said in *Pennington et al. vs. Pennington,* 70 *Md.,* 430: " In all cases the Court should see that there is a real *bona fide* question for controversy involved, as between the parties to the case, *and that there is an existing propriety for its immediate decision."* Hugh Wethered having died without issue, there can be no doubt, under the several clauses of the part of the will which provides for the trust, about the right and duty of the trustee to pay the net income to the four survivors, Elizabeth Wethered, Mary Wethered, George Y. Wethered, Jr., and Eliza Y. Owings, as long as they all live. Nor can there be any doubt under the will that upon the death, *without issue,* of Mary Wethered, George Y. Wethered, Jr., or Eliza Y. Owings, or upon the death of Elizabeth Wethered, the survivors are to receive the net income; and it was perfectly proper for the Court below to construe the will that far. But beyond that we do not feel justified in doing so. Parties not now in being, or not before us, may be interested in or affected by the determination of the questions involved in the disposition of the corpus of the estate, and of the income in the event of Mary Wethered, George Y. Wethered, Jr., or Eliza Y. Owings dying *leaving issue;* and unless there is some apparent necessity for it, or at least " an existing propriety for its immediate decision," it is safest to defer a decision that might affect such persons until the contingency arises, if it is then brought before the Court.

Being of the opinion that the Court ought not, under the circumstances of the case, to have passed upon the disposition of the corpus of the estate or of the income in the event of Mary Wethered, George Y. Wethered, Jr., and Eliza Y. Owings, or any of them dying leaving issue, we must reverse so much of the decree as undertakes to do so (without desiring to be understood as differing with the Court below on such construction, as we express no opinion

on those questions), and will affirm the decree in other respects, excepting as to the furniture claimed by Mary Wethered, which is not before us.

> *Decree reversed in part, and affirmed in part; costs to be paid by the appellee from the corpus of the estate.*

(Decided 14th March, 1894.)