EQUITABLE TRUST COMPANY, Trustee under the will of
Lindley C. Kent, deceased,

*vs.*

ROLAND G. KENT, MARY KENT WYATT, ROSAMOND C. KENT
and ROSAMOND C. KENT, Guardian of Lindley C. Kent, Jr.

*New Castle, June 27, 1917.*

Where a testator gave pecuniary legacies and the residue to a trustee
in trust for his widow and son for life, with remainder over and gave to the
executor power to sell real estate, and the executor sold productive and
unproductive real and personal estate, collected income consisting of rents,
interest and dividends, and paid debts and legacies of the decedent, *held*,
that the life beneficiaries were entitled to have equitable income for the
first year after the death of the testator; that said income was to be ascer-
tained by determining what sum, if it had been invested from the death of
the testator for one year at the rate of four and one-half per centum per
annum would with the interest amount to the sum of money received by
the trustee, the larger sum being principal for the remainderman and
the smaller one income for the life tenant.

BILL IN THE NATURE OF A BILL OF IINTERPLEADER and for
instructions to a testamentary trustee. The case was heard
on bill and answer, and the facts appear in the opinion of
the Chancellor.

*Richard S. Rodney*, for the complainant.
*Hugh M. Morris*, for the life beneficiaries.

THE CHANCELLOR. Lindley C. Kent, who died February
12, 1916, by his will, after making sundry specific and pecuni-
ary bequests (all of which have been paid), disposed of his
residuary estate in four equal parts. One part was given to a
trustee to invest the same and pay the income for the support
of a minor son of the testator until he reaches a certain age,
on arrival of which he is entitled to the principal, with a provi-
sion that if he dies before that time the trust estate held for

him is to be divided between the testator's widow and remaining children, and the issue of any child of the testator then dead. Another part was given to the same trustee to pay the income to the testator's widow for her life, and at her death to divide the principal between her children then living and the issue of deceased children. The same corporation was appointed executor and trustee, and the testator authorized his executor to sell and convey real estate of the testator.

On April 3, 1917, the executor filed a first account showing payment of debts and the sum remaining for distribution as residue $97,586.94, partly in cash and partly in securities. Also that the net income received since the death of the testator to the date of the account was $5,470.59. The trustee being entitled to two-fourths of the residue has received from itself as executor $48,793.47, on account thereof. Of this sum $2,735.30 was income which had accrued prior to the date of the account, and included rent, interest and dividends. In other words, the trustee has received as part of the residuary devise and bequest a sum of money which includes what is clearly principal and what is clearly income when and as received by the executor.

It further appears by the account that the executor pursuant to testamentary authority sold from time to time real estate of the testator and received $17,325 therefrom, and no income was received by the executor thereon. This sum was included in the sum of $97,586.94, from which the sum of $48,-793.47 was paid to the trustee as above stated, so that of that latter sum $8,662.50, being two-fourths of $17,325, was the proceeds of sale of real estate. The proceeds of sale of the real estate was mingled by the executor with the personal estate, and debts and legacies were paid from the general fund. The sum received by the trustee was part of this commingled fund. Part of the real estate and part of the personal property have not yet been converted into money by the executor. The testator had three children, and they and his wife survived him and are still living.

A bill has been filed by the trustee, the Equitable Trust Company, for instructions, the widow individually and as

guardian for the minor son of the testator, and the other two children of the testator (who are adults) being parties defendant. All of the defendants have appeared, and admitted the allegations of the bill.

It appears, therefore, that all the persons interested both presently and in remainder are parties, unless the minor son dies before the age fixed by the will and one or both of the other children of the testator also die before that time leaving issue, whereby the issue (perhaps now unborn) would be substituted for parents: But in any event those now interested, including those with vested remainders in the shares held in trust for the widow and minor son, are parties, and the trustee is now entitled to instructions.

The questions which arise and were discussed at the argument were these: (1) Is the sum of $2,735.30 received by the trustee as part of the larger sum, and which represents income when and as received by the executor, to be treated by the trustee as principal or income, and if income whether all or part only of it be paid to the beneficiaries as income? Or, more succinctly, are the life beneficiaries entitled to the money received by the executor as income on the clear residue computed from the time of the death of the testator as ascertainable by the accounts of the executor? (2) Is the whole sum received by the trustee, which includes what was principal at the testator's death and income received thereon since, to be treated as principal? (3) Are the life beneficiaries entitled to equitable, instead of actual income, that is to say, to have income such sum as at a fixed rate of interest would have been produced had the total fund received been invested at that rate from the death of the testator?

When by will successive interests are given, whether by direct gifts or to trustees for beneficiaries in succession, the problem as to the right to the first year's income arises in the absence of testamenatry intention. When the gift relates to specific property, real or personal, the product or interest therefrom follows the corpus from the death of the testator and belongs to the life tenant: provided, of course, the property is not needed in a proper case for the payment of debts of the

decedent. *Custis, et al., v. Potter's Adm'r.*, 1 *Houst.* 382, 68 *Am. Dec.* 422; *Kinmonth v. Brigham*, 87 *Mass.* 270.

Unquestionably the established rule in Delaware is that a gift of a residuary estate, or a part thereof, in trust for the widow or child of the testator for life, carries income from the death of the testator, and not from a year therafter.  The Court of Errors and Appeals, in 1857, in the case of *Custis v. Potter's Adm'r.*, 1 *Houst.* 382, 68 *Am. Dec.* 422, where general pecuniary legacies had been given to nephews and nieces of the testator payable at certain ages, and which ages they attained more than a year after the death of the testator, decided that the legatees were not entitled to interest from the death of the testator, or until they had attained the fixed age. The court said a different rule prevailed when the legatee was a child of the testator; or was a person to whom the testator stood *in loco parentis*, and no other provision for it was made. It was also declared that specific bequests, or bequests of the corpus carried their product or interest from the testator's death, unless a testamentary intention to the contrary be shown. The court also referred to gifts of the residue as a further exception to the general rule that general legacies draw interest from the time they are payable; but it was an *obiter dictum* in this case.

In the case of *Flinn v. Flinn*, 4 *Del. Ch.* 44 (1868), a share of the residuary estate was given to the tastator's children to be held by the executor at five per centum per annum, and "to be paid to them as they severally arrive at twenty-one years," with limitation over as to shares of any child who did not attain that age.  No other provision was made in the will for the children who were infants.  Chancellor Bates, after stating the established rule that legacies to infant children carry interest from the death of the testator and not from a year after, allowed out of the annual interest on their respective shares a sum deemed sufficient for the support of the legatees. *Custis v. Potter's Adm'r.* was not cited.

Chancellor Nicholson in *Baker v. Fooks*, 8 *Del. Ch.* 84, 67 *Atl.* 969 (1896), dealt with the case where a sum of money was bequeathed to a trustee to be invested and the income

paid to the widow of the testator for life and at her death to become part of the residuary estate of the testator. The trustee filed a bill for instructions, alleging that he had by authority of the Chancellor taken certain investment securities owned by the testator at his death and had received interest and income thereon, the amount thereof varying from year to year. A decree was made giving to the widow for life interest at six per cent. on the legacy to be computed from the death of the testator, but there was in the report of the case no opinion, and therefore the reasons do not appear.

In the case of *Equitable, etc., Co. v. McCurdy,* (1916) *ante. p.* 156, 98 *Atl.* 220, there was a gift of part of the residuary estate to a trustee to invest and pay the income to the daughter of the testatrix for life, and the trustee received from the executor in payment of the gift investment securities held by the testatrix at her death, and also income which had accrued on these specific securities since the death of the testatrix. This accrued income was awarded to the life beneficiary.

In Delaware the cases seem to limit the application of the rule to the widow or children of the donor, or to some one as to whom he stood in *loco parentis,* though as stated in *Equitable, etc., Co. v. McCurdy,* the rule has been elsewhere applied to cases where the relationship did not exist. The present case was a gift of residue in trust for a daughter of the testator, so it is not here necessary to extend the rule, though it seems clearly to go beyond children, or those to whom the testator stood in *loco parentis,* and applies to all gifts of residue to one for life with remainder over. *Green v. Green,* 30 *N. J. Eq.* 451.

When the subject matter of the gift is residue, or an aliquot part of it, then it must be determined what share of it belongs to the life tenant and what to the remainderman. The executor who is given a year in which to settle the estate receives the assets of the decedent in various forms. When and as received some of the estate is clearly principal and some clearly income. In general all of it, after it comes into his hands is principal. From the moneys so received he pays the debts, administration expenses, pecuniary legacies, if any, and has a balance which constitutes the residue. He may, or may not,

have so kept his account as to be able to show what part of the sum remaining was income when and as it came to him. It is manifestly impossible to say that the debts and administration expenses were paid out of what was principal and what was income, for they were commingled; and equally difficult to show whether they were paid from the personalty of the decedent, or from the proceeds of the sale of the real estate. Even if the executor has so kept his account that he can say what portion of the residuary balance was income when he received it, there is always some part of the assets of the testator which did not yield income. It is manifestly difficult, therefore, even in the ordinary case to adjust the rights of the life tenant and the remaindermen by determining what was actual income, when and as received. There are cases where it is inequitable or impossible to follow that principle, viz: Where the testator had money invested in wasting securities, or in bottomry bonds where the principal and income are paid as one sum, and other like cases. There may be delays beyond the year in conversion of assets, or for other reasons the executor may not at the end of the year be able to pay to the trustee the residuary estate. If there be found some equitable general rule to give to the life tenant what is equitably to be considered income from the death of the testator without regard to actual income, it should be adopted.

In *Hill on Trustees*, the learned author says there are four possible solutions, and that the decisions of very eminent judges may be urged in support of each. His classifications, omitting his citations, are these: (1) The tenant for life may be entitled to nothing until the expiration of the twelve months from the testator's death, the income in the meantime being added to and made a part of the capital of the residue. (2) The beneficiary for life during the first year after the testator's death will take the income of such parts of the estate as are properly invested at the testator's death, or as may become so invested during that year. (3) The life beneficiary may be entitled to the income arising from the property in its existing state during the first year from the testator's death. (4) The life tenant will take, not the interest actually arising from the property

during the first year after the testator's death, but the amount of the interest at three per cent. on such sum as would have been produced at the end of the year by the conversion of the property, i. e. add the income actually received to the principal received, and divide the aggregate by one hundred and three, and so obtain equitable in the place of actual interest or income. The last-mentioned solution is that which according to the learned author has the greatest authority in its favor.

It has been held that when it is shown what portion of the residue which came to the trustee was received by the executor as income and what as principal, then the rights of the life tenant and remainderman are thereby fixed, the former taking that which was income when and as received by the executor and the remainder was principal to be held for further income and ultimately for the remaindermen. *Lovering v. Minot*, 63 *Mass.* 151, 156; *Sargent v. Sargent*, 103 *Mass.* 297; *Ayer v. Ayer*, 128 *Mass.* 575, 597; *Cushing v. Barrell*, 137 *Mass.* 21; *Green v. Green*, 30 *N. J. Eq.* 451; *Hewitt v. Morris*, 1 *Turner & Russell*, 241; *Allhausen v. Whittell*, *L. R.* 4 *Eq. Cas.* 295; *Wethered v. Safety, etc., Co.*, 79 *Md.* 153, 28 *Atl.* 812 (where the court considered that debts of the testator as having been paid from capital and not income). Where it appears that the trustee received the proceeds of unproductive property an apportionment is made between the life tenant and remainderman so that the former received interest at the usual rate obtained from trust investments from the death of the testator. This is done by ascertaining what sum, if it had been invested from the death of the testator at an arbitrarily fixed rate to the time of payment to the trustees, would with interest amount to the sum so received by the trustee, and treat that sum as principal to be thereafter held by the trustee for the benefit of the life tenant and then for the remainderman, and give the balance to the life tenant as income. *Allhausen v. Whittell*, *L. R.* 4 *Eq. Cas.* 295; *Lawrence v. Littlefield*, 215 *N. Y.* 561, 109 *N. E.* 611 (1915); *Edwards v. Edwards*, 183 *Mass.* 581, 67 *N. E.* 658. The same principle was applied where the testator had an interest in a partnership and the executor received therefrom profits in the settlement of the partnership affairs.

*Kinmonth v. Brigham*, 87 *Mass.* (5 *Allen*) 270; *Westcott v. Nickerson*, 120 *Mass.* 410.

The simplest, most practicable and equitable rule is that which *Hill on Trustees* says has the weightiest authority, and which is adopted in *Loring's Trustees' Handbook*, at *page* 122 (*3rd Ed.*), viz: equitable instead of actual income—that is to say, the sum which the life beneficiary would have received at the end of a year after the death of the testator if the trust fund had been invested at a certain selected rate of interest from the death of the testator. To illustrate, if the fund was $10,000 and the interest rate be fixed at five per cent., then if that sum be divided by one hundred and five the result, $9,523.80, will represent principal and the balance $476.20, will represent income for one year, this later sum being five per cent. of the former. This method is the simplest because it is based on simple terms in the calculation thereof; is not dependent on the classifications of the estate by the executor; and disregards the sources from which the fund is produced. It is equitable because it is applicable to productive and unproductive assets; includes proceeds of real estate as well as personalty; disregards proportions of productivity of income; includes all kinds of income such as rents, interest, dividends and accretions; and, which is highly important, gives to the life beneficiary income for the first year unaffected by the delays of executors in administering the estate of the decedent, or in paying over and delivering the trust fund.

It would be applicable whether there was, or was not, an equitable conversion of realty into personalty. It should also be applied in cases where the trustee by authority of the Court of Chancery takes *in specie* in payment of a legacy property of the decedent, and in this respect the principle adopted with respect to the Pennypacker will in the case of *Equitable, etc., Co. v. McCurdy*, above cited, should not be followed.

The rate of interest should be such as a trustee by careful, conservative investment in suitable trust investments could reasonably realize as interest or income, and should not be the legal rate of interest fixed by law as between debtor and creditor. *Edwards v. Edwards*, 183 *Mass.* 581, 67 *N. E.* 658; *Lawrence*

*v. Littlefield*, 215 *N. Y.* 561, 109 *N. E.* 611 (1915). In England the rate was in early times based on the income from Government securities, and was about three per cent. In this country and community, and at this time, a larger rate is so obtained, and a rate of four and one-half per cent. is, in my opinion, a just and fair rate. When a clear testamentary intention to the contrary appears, the rule is inapplicable. It is equally inapplicable, as above stated, to specific gifts for successive beneficiaries. The rule is applicable to a gift to trustees for successive holders as well as to direct gifts of successive interests. *Green v. Green*, 30 *N. J. Eq.* 451; *Wethered v. Safety, etc., Co.*, 79 *Md.* 153, 28 *Atl.* 812.

This principle will be applied here, even though in this particular case it is accurately ascertainable from the accounts as kept by the executor of Lindley C. Kent what portion of the trust fund now payable to the trustee was income when and as received by the executor.

Applying the rule to the facts here, it appears that the trustee has received $48,793.47 on account of the residue one-half of which is $24,396.73 is held in trust for the widow for life and the other half for the son until he reaches a certain age. By dividing $24,396.73 by 1.045, the result $23,346.15 constitutes the principal of the trust estate, which is hereafter to be held in trust for Rosamond C. Kent, the widow of the testator; and the balance, $1,050.58, is income for the first year from the testator, and is payable to said widow. The same applies to the other sum of $24,396.73 for the benefit of Lindley C. Kent, Jr., the son of the testator.

Let a decree be entered accordingly.