No. 13,935.

ESTATE OF HERRINGTON.
DONALDSON, TRUSTEE ET AL. *v.* HERRINGTON, EXECUTOR
ET AL.
(70 P. [2d] 337)

Decided June 21, 1937. Rehearing denied July 12, 1937.

Mr. J. GLENN DONALDSON, Mr. BERNARD J. SEEMAN, for plaintiffs in error.

Mr. IRA C. ROTHGERBER, Mr. WALTER M. APPEL, for defendants in error.

*In Department.*

MR. JUSTICE KNOUS delivered the opinion of the court.

FRED Herrington departed this life May 19, 1924. His will, admitted to probate in the county court of the City and County of Denver, June 3, 1924, inter alia, contained the following provision, to wit: "8. I give and bequeath unto my niece, Isabel Herrington, of Denver, Colorado, the sum of thirty thousand dollars ($30,000.00), in trust, however, for the use and benefit of my two nieces, the children of my brother, Tom Herrington, of Denver, Colorado, namely Mary Herrington and Jane Herrington, share and share alike. I direct my said niece, trustee hereby created, to keep the said thirty thousand dollars ($30,000.00) invested in income bearing securities, and pay over the income therefrom annually to each of my said nieces, Mary and Jane Herrington, and if in her uncontrolled discretion she deems it necessary for their maintenance and education, she shall be

at liberty to use any part or all of the principal for such purpose, and when either of my said nieces, Mary or Jane, attains the age of twenty-four years, my said niece, Isabel, is directed to turn over the balance of her share of principal or income to said niece attaining said age. In case of the death of either of my said nieces before the trust hereby created has been executed, the surviving niece shall be paid the balance of the total principal and income of this bequest at the time and in the manner aforesaid. In case both of my said nieces shall die before this said trust shall be executed in the manner aforesaid, the amount of principal and income at the time of the death of the survivor shall be paid to my brother, Tom, if he shall survive, and, if not, the same shall revert to my residuary estate. Inasmuch as my said niece, Isabel, has property of her own in excess of the said estate hereby established in her, I direct and request that no bond be required of her for the faithful performance of said trust.''

Brothers of the testator, Cass E. Herrington, now deceased, and George Herrington were named executors of the will. The trust fund contemplated by the foregoing paragraph was not set up or segregated from the estate, nor were any securities, legal for investment of trust funds, set aside for the above trust fund. At the time the will was admitted to probate the beneficiaries mentioned in the paragraph under discussion, were respectively fifteen and seven years of age. Since that date, from the estate, Mary Herrington, now Mary Donaldson, has received in excess of the sum of $16,000 and Jane Herrington has received in excess of $13,000. On October 25, 1934, J. Glenn Donaldson, the husband of Mary Donaldson, nee Mary Herrington, was appointed trustee of the fund and shortly thereafter demanded that the executors treat the $30,000 bequeathed to Mary and Jane as equitably converted as of the date of the death of Fred Herrington, deceased, into such securities as are authorized by section 5269, C. L. 1921, and that the trustee be

paid $30,000 plus the income thereon on the unpaid balance at the rate said converted fund would have earned if it had been converted into securities legal for investment of trust funds under the laws of Colorado, less any prior payments made to the beneficiaries or their trustee.

The executors and the residuary legatees contended that the trustee and the beneficiaries were entitled to receive only the $30,000 bequeathed less any payments made on account thereof without any income thereon for the period of time said funds, or any part thereof, had been held in the estate and not paid over to either the beneficiaries or their trustee.

As a result of the demand of the trustee the executors petitioned the county court of the City and County of Denver for construction of the foregoing provision of the will, to the end that the respective contentions of the interested parties might be disposed of. After a trial the county court found that the trustee was entitled to receive from the executors of the estate the sum of $30,000, together with an equitable income on the same or any part thereof while retained by the estate from the date of the death of Fred Herrington, less any payments made on account of said trust fund to either of the beneficiaries or to the trustee. The county court fixed the rate of the equitable income to be paid as aforesaid at 2.09 per cent per year, being the amount it determined was annually earned by the entire estate from the date of the death of Fred Herrington to the date of the hearing. This order of the county court is here for review upon the petition of the trustee and the legal representative of the minor beneficiary.

The surviving executor and the residuary legatees made assignments of cross error, asserting that the county court was wrong in allowing the trustee or the beneficiaries any income whatever on the $30,000 fund in accordance with their prior contention as above mentioned. However, upon the oral argument of the cause before this court counsel for the defendants in error with-

drew the assignments of cross error, leaving the question as to the amount of income to which the beneficiaries and the trustee are entitled to receive from the executors of the estate the only issue for determination.

Section 5269, supra, does not provide for any minimum rate of interest at which funds of a deceased person's estate shall be invested, but enumerates a number of types of securities, including United States Government bonds, which shall be deemed legal investments. The trustee contends that the yardstick to be applied in determining the amount of income to which the trust fund is entitled should be the interest earnings of government bonds during the period involved. In support of this proposition the trustee cites English texts and *Hume v. Richardson* (1862), 65 Eng. Chancery Rep. 29; *Brown v. Gellathy*, vol. II, L. R., Ch. App. Cas. 751, and *Howe v. Earl of Dartmouth*, 7 Ves. Jr. 137 (1802), cases similar to this in which the court ascertained the income to be allowed the cestui que trust upon the basis of the earnings of government bonds.

We are of the opinion that the English courts in using the yardstick indicated, did not intend to promulgate a fixed rule for computing the income beneficiaries are entitled to in cases of equitable conversion, but adopted this method of calculation as a convenient means of arriving at the income to be allowed in the particular cases under consideration. It is well known that interest rates vary in different countries and communities and fluctuate from time to time. This situation was recognized in the case of *Equitable Trust Co. v. Kent,* 11 Del. Ch. 334, 101 Atl. 875, 878, where the court, after remarking about the rate of interest allowed in some of the English cases, fixed a larger rate as equitable under the circumstances of the case under consideration. No one can say with certainty in what securities this trust would have been invested had it been set up at the time the will was admitted to probate, nor much less could have foreseen what the income or loss would have been from the selected

securities in such an event. For instance, under the provisions of section 5269, supra, it is permissible under the procedure therein provided to invest estate funds in first lien mortgage securities upon real estate situate in Colorado, yet it is a matter of common knowledge that in many instances investors in this type of securities have suffered serious loss in income as well as principal, during the period involved in this case. Equity would not permit those upon whom devolved the duty of setting up the trust fund to arbitrarily select a given legal security which had showed a low rate of income over the period as the applicable yardstick in a settlement with the beneficiaries, and likewise it would not be proper where no fraud or other unusual circumstances exist, for the beneficiaries to select from a list of legal investments the one type bringing the higher return as a measure of accountability for income due them.

The evidence would indicate that Cass E. Herrington, one of the executors named in the will, until his death on April 19, 1934, possibly by an extralegal assumption of authority, but at least with the tacit approval of the beneficiaries under the will, operated the affairs of the estate in somewhat the same manner as one would conduct his own business. It would even appear that from time to time, when estate funds were not available, he advanced money from his own funds to the unsegregated trust fund beneficiaries. There is nothing to indicate that the investments of the estate funds were injudicious or ill-advised and it was the undoubted intention of the executors in the interest of all the beneficiaries that the property of the estate should be so invested, safety considered, as to bring in as large an income as could be obtained. In fact, the evidence introduced would indicate that the nonlegal investments of the estate as a whole produced a larger income than the type of investments permitted by section 5269, supra. In the case of *Equitable Trust Co. v. Kent, supra,* the rule of computation which we believe most applicable to a case of

this character is stated by the court in the following words: "The rate of interest should be such as a trustee by careful, conservative investment in suitable trust investments could reasonably realize as interest or income. * * * *Edwards v. Edwards,* 183 Mass. 581, 67 N. E. 658; *Lawrence v. Littlefield,* 215 N. Y. 561, 109 N. E. 611." Under this rule and the circumstances of this case, we, therefore, believe the most equitable and available yardstick for the ascertainment of the income to which the trustee is entitled, is the net percentage income on the estate as a whole. The county court, after the introduction of extensive evidence on this subject, ascertained that the average investment of the entire estate during the period involved, was $127,151.07. The trustee asserts that the average investment should have been taken as $86,187.74, the difference being an item of $40,963.33, made up of Tongue Creek Orchard Company stock, promissory notes in default, and other nonincome producing property. We believe the county court was right in including the items mentioned as it would be extremely unusual in an investment of this amount not to have included therein some nonincome producing items, and, indeed, it may properly be assumed that had the trust fund been invested in legal securities at the time the will was admitted to probate, at periods, there would have been some nonincome producing securities in the fund. The admitted gross income for the estate for the period involved was $44,040.93. In arriving at the net income as a basis for determining the percentage earnings of the estate, the county court deducted $17,506.43, which included, among other items, $4,925 legal expenses and $7,500.00 executors' fees, and upon this basis fixed the percentage earning of the whole estate at 2.09 per cent. We believe the items for legal expenses and executors' fees should not have been deducted from the gross income in arriving at the net for the purposes of this computation. This court in the case of *Davis v. Harbaugh,* 76 Colo. 73, 230 Pac. 103, held that expenses of admin-

istration are not chargeable against a money legacy where the residuary corpus is sufficient for this purpose as here. Had the trust fund been set up as the will contemplated, its income would not be affected by the items mentioned, which would be a charge against the residue of the estate, and hence in this computation the net income should not be so depreciated.

Except in the particular discussed, the judgment of the county court is affirmed, with directions to the county court to compute the annual percentage income rate of the estate in accordance with this opinion and to allow the trustee income on that basis. Each party to pay their own costs in this court.

MR. JUSTICE HILLIARD and MR. JUSTICE BAKKE concur.