SARAH E. N. EDWARDS & another, trustees, *vs.* HENRY EDWARDS & others.

Norfolk.    May 21, 1903. — June 18, 1903.

Present: KNOWLTON, C. J., LATHROP, HAMMOND, LORING, & BRALEY, JJ.

*Devise and Legacy.    Capital and Income.*

Where a testator gives all his property to trustees to pay the annual income to a tenant for life, indicating no intention that the time for establishing the fund shall be postponed, and a delay is necessary before the property can be converted into an income-producing fund, the income is to be computed from the time of the testator's death.

In determining between a tenant for life and a remainderman what part of a gross sum in the hands of trustees if invested at the time of the testator's death would have been sufficient to produce with its income the gross sum on hand, it is necessary to consider the actual income that can be obtained from investments, and not the rate of interest established by law.

A testator gave all his property to trustees to invest and reinvest in such securities as the laws of the Commonwealth allow savings banks to invest in, to pay the net income to his widow during her life and on her death to his children, with a remainder to his grandchildren or heirs at law.  A large part of the estate consisted of vacant land on a street in Boston which did not produce sufficient income to pay the taxes and expenses upon it.   This land was sold at a substantial advance three years after the death of the testator, the trustees having used every reasonable effort to sell it and having exercised a sound judgment in holding it until the time of the sale.  On a bill by the trustees for instructions as to the apportionment of the proceeds of the land between principal and income, it was *held*, that the rights of the life tenant to income should be ascertained as if the fund had come into existence immediately after the testator's death, and that the case should be sent to a master to ascertain what sum would have been sufficient, if invested immediately after the death of the testator, to produce, with the income which reasonably could have been obtained from it, the sum in the

hands of the trustees as the net proceeds of the land after deducting disbursements on account of the property, and that this sum when ascertained should be held as principal and the remainder paid over as income.

BILL IN EQUITY, filed March 23, 1903, by the trustees under the will of James Edwards, for instructions as to the application of the proceeds of the sale of a certain valuable tract of vacant land on Huntington Avenue in Boston.

The case came on to be heard before *Braley*, J., who reserved it upon the bill and answer and an agreed statement of facts for the consideration of the full court, such order to be made therein as justice and equity might require.

*A. P. Loring*, for Sarah E. N. Edwards.

*E. A. Howes, Jr.*, guardian *ad litem*, for the defendants.

KNOWLTON, C. J.    This is a bill for instructions by trustees appointed under the will of James Edwards.   By the will he gave all his property to these trustees, stating the trust as follows:  " To invest and reinvest the same at their discretion, in such securities as the laws of this Commonwealth allow savings banks to invest their funds in, and the whole net income therefrom shall be paid to my said wife as long as she shall live, for her own use and disposal, with the exception that I direct that from said income there shall be paid monthly to my son, William Edwards, and his wife, Alice J. Edwards, in equal shares, the sum of one hundred dollars, as long as my said wife shall live."    At the death of his wife the trustees are to pay the income to his children and to the wife of one of them, and at the termination of the trust, to pay over the remainder to his grandchildren or to his heirs at law.   The value of the personal property that came into the hands of the trustees was nearly $70,000, and the value of the real estate was more than $200,000. Much of the personal property that he left was stock carried by brokers on margins, and the most valuable part of the real estate was unproductive land on Huntington Avenue which was appraised in the executor's inventory, filed November 11, 1896, at $150,000, and in the trustees' inventory, filed December 31, 1898, at $155,000, and was sold by the trustees on September 1, 1899, for $196,500.   The question relates to the apportionment of income and principal between the life tenant and the remaindermen, from the proceeds of the sale of the land on Huntington

Avenue. It is agreed that the value of this land at the time of the testator's death was the same at which it was appraised in the executor's inventory, and that the trustees used every reasonable effort to sell it, and in view of the improvements in that vicinity, exercised a sound judgment in holding it until the time of the sale. It did not produce sufficient income to pay the taxes and expenses upon it. Under language like that of this will, which gives the trustees all the property, real and personal, and does not indicate an intention that the time for establishing the fund shall be postponed, and which gives to a life tenant the annual income, it is well settled law in this Commonwealth that the income is to be computed from the time of the testator's death. *Sargent* v. *Sargent*, 103 Mass. 297, 299. *Westcott* v. *Nickerson*, 120 Mass. 410. In the present case the testator obviously intended that the entire property should be converted into one fund, and that the unproductive and speculative investments which he had at the time of his death should be changed without unreasonable delay. Much of the property held on margins was not of such a kind "as the laws of this Commonwealth allow savings banks to invest their funds in," and the land on Huntington Avenue was not in a condition to be held as a permanent investment. It was, therefore, the duty of the trustees to convert this property into an income-producing fund, and this they did according to their best judgment and discretion. The testator is presumed to have expected that some time would be required to accomplish this. At the same time, he is presumed to have intended that the rights of the life tenant to income should be ascertained on the creation of the fund, as if the fund had come into existence immediately after his death. This is in accordance with the rule repeatedly stated by this court. *Kinmonth* v. *Brigham*, 5 Allen, 270, 278. *Sargent* v. *Sargent*, 103 Mass. 297. *Westcott* v. *Nickerson*, 120 Mass. 410. *Mudge* v. *Parker*, 139 Mass. 153. The rule is applicable as well when the delay in converting the property is necessary as when it is caused by the voluntary act or default of the trustees. *Loring* v. *Massachusetts Horticultural Society*, 171 Mass. 401, 404. In *Westcott* v. *Nickerson, ubi supra*, Chief Justice Gray says of the property in such cases, " The necessary inference and the established rule are that it must be invested as a permanent fund,

and the value thereof fixed at the time when the right of the first taker begins, that is to say, at the death of the testator." In *Sargent* v. *Sargent, ubi supra,* the same justice says, "The general rule is established, that the tenant for life is entitled to the income of a residue given in trust, from the time of the testator's death."

The question raised by this bill for instructions relates only to the proceeds of the sale of the land on Huntington Avenue. The life tenant, the widow of the testator, is one of the trustees who bring the suit, and in the bill she states her claim as follows: " The widow of the testator, who with the annuitants, is entitled to the income of the trust fund from the time of the testator's death to the filing of this bill, claims that she is entitled to receive a proportionate part of the proceeds of the sale of said Huntington Avenue land, as the income of that part of the trust estate, and contends that all the taxes, assessments and brokers' commissions, which the trustees and executors have paid, and are bound to pay, should be charged to the funds received from said sale, and that the fund should then be so divided as to constitute a fund at the time of the testator's death, which, with interest at a reasonable rate, to wit, four per cent, will produce the amount for which the said estate was sold, less the expenses accruing on the same, and all betterments against said premises which the trustees are bound to pay, and that then she is entitled to said interest or income, and that the fund determined as aforesaid shall form a part of the corpus of the estate."   The question arises whether, in apportioning the principal and income, we are to assume that the fund, if established at the time of the testator's death, would have earned income at the rate of six per cent per annum, or only at some lower rate.   It was said at the argument, and we suppose it to be a fact of common knowledge, that a fund invested in such securities as savings banks may invest in under our laws, cannot be made to produce an income of nearly so much as six per cent per annum, and the life tenant, in stating her claim, suggests the allowance of " interest at a reasonable rate, to wit, four per cent."   In this statement she recognizes the principle that in this case we are not to deal with interest as an allowance made by law to represent damages for the failure to pay money when

it is due. We are to deal with the income which could have been obtained by the trustees if the fund had been ready for investment and had been invested immediately after the death of the testator. The failure to invest it then was not the fault of anybody, and we are not called upon to allow interest as interest, but only to ascertain the probable income. Whenever interest is to be allowed for the failure to pay a legacy when it is due, or for any other neglect to pay money, the law knows no other rate than six per cent per annum. *Welch* v. *Adams*, 152 Mass. 74. *Loring* v. *Massachusetts Horticultural Society*, 171 Mass. 401. *Bartlett, petitioner*, 163 Mass. 509, 521. But we are to ascertain as between tenant for life and remainderman, what part of a gross sum now in hand shall be treated as capital and what part as income, and when we are called upon to find out what sum at an earlier date, if invested by trustees, would have been sufficient to produce, with its income, the gross sum now in hand, we must look to the actual income that can be obtained from investments, and not to the rate of interest established by law.

In *Westcott* v. *Nickerson, ubi supra*, it is said that the amount obtained " is to be distributed between the tenant for life and the remainderman, by computing what sum, if received at the death of the testator, adding interest at six per cent with annual rests, would produce the amount afterwards actually received . . . and by investing the original sum, so computed, as principal, and distributing the residue as income." In *Kinmonth* v. *Brigham, ubi supra*, a direction is given in similar language. But in neither of these cases was any consideration given to the possible difference between the income actually obtainable and the rate of interest prescribed by law. The first of these cases was decided in 1876, and the other in November, 1862, and at the time to which the decisions relate there was little if any difference between the usual earnings of capital and the rate of interest established by law. Neither the parties nor the court had any occasion to consider the question now raised.

We are of opinion that the case should be referred to a master to ascertain what sum would have been sufficient if invested by the trustees immediately after the death of the testator, to produce, with the income which they reasonably could have ob-

tained from it, the sum in the hands of the trustees as the net proceeds of the land on Huntington Avenue, after deducting their disbursements on account of the property. That sum is to be held as principal and the remainder is to be paid over as income.

*So ordered.*