JAMES W. SPRING, trustee, *vs.* T. CLARENCE HOLLANDER
& others.

Worcester.    September 28, 1927. — November 23, 1927.

Present: BRALEY, CROSBY, PIERCE, CARROLL, & WAIT, JJ.

*Trust,* What constitutes, Under G. L. c. 183, §§ 49, 51.   *Devise and Legacy,*
Life estate, Remainder.   *Real and Personal Property.   Capital and
Income.   Executor and Administrator,* Sale of real estate.

A testator owning real estate and personal property provided in his will:
"All of my estate both real and personal, I give, devise and bequeath
to my said wife to have and to hold to her during her natural life, and
I hereby direct that she may use and dispose of so much of the personal
property outside of the income thereof as she may desire."   A trustee
was appointed in 1915 under R. L. c. 127, § 28, and during the widow's
life he sold certain unproductive and unimproved land upon which the
widow had paid a substantial sum as taxes out of the income which she
had received from the rest of the estate.   The widow died and, after
her, the remainderman, and the trustee then filed a petition for instruc-
tions; and it was *held,* that

(1) The will did not create a trust in the real estate, and the question
did not arise whether there was by implication or otherwise a trust
created in the personal property;

(2) It was the widow's duty to pay the taxes upon the land although
it was unimproved and unproductive, and her estate was not entitled
to be reimbursed for sums so paid;

(3) The widow during her life, after the sale, was entitled only to the
income from the proceeds of the sale; the remainderman on her death
was entitled to the entire proceeds of the sale which represented the
corpus of the realty;

(4) The right to the proceeds of the sale vested in the remainderman
at the death of the widow, the life tenant, and the statute under which
the sale was made then ceased to be applicable; the property at that
time was personalty in fact and the executor of the will of the remainder-
man, and not devisees under his will, was entitled to it.

PETITION, filed in the Probate Court for the county of
Worcester on January 27, 1927, by the trustee appointed
in 1915 by a decree of that court under the provisions of
R. L. c. 127, § 28, to sell land formerly owned by Lewis D.
Jackson, late of Boston, subject to a contingent remainder
created by his will.

The facts were agreed upon and by order of *F.H. Chamberlain,* J., the case, without a decision, was reported to this court for determination.

*J. W. Spring,* for the executors of the will of Mary A. Jackson.

*T. H. Gage,* (*C. P. Lincoln* with him,) for the executor of the will of Lewis C. Benton, and others.

PIERCE, J.   This is a petition for instructions by a trustee appointed by the Probate Court for the county of Worcester in 1915, under the provisions of R. L. c. 127, § 28, to sell land subject to a contingent remainder.   The land in question was part of the estate of Lewis D. Jackson, the material portions of whose will are: "First. All of my estate both real and personal, I give, devise and bequeath to my said wife to have and to hold to her during her natural life, and I hereby direct that she may use and dispose of so much of the personal property outside of the income thereof as she may desire.   At the decease of my said wife I give, devise and bequeath as follows: [several bequests follow] . . . Eighth. All the rest, residue and remainder of my property, both real and personal, in existence at the death of my said wife I give, devise and bequeath to said Lewis C. Benton and his heirs and assigns, if he shall be living at the decease of my said wife, but if he shall not be then living and if he shall leave no child or children living at his decease, then and in such case I give, devise and bequeath all said rest, residue and remainder to my three nephews Charles Jackson, Frank L. Jackson and John Jackson in fee simple share and share alike."

The real estate involved in the case at bar was a "two thirds undivided interest in 12 acres of vacant land outside business section, City of Worcester" appraised at $600. It was retained by Mary A. Jackson, widow of Lewis D. Jackson, from the death of her husband in 1898 until 1915, when it was sold for $3,228.13 by a trustee appointed by the Probate Court under R. L. c. 127, § 28, on petition of the widow.   Section 31 of this chapter provides that such trustee "shall receive and hold, invest or apply the proceeds of any sale or mortgage made by him for the benefit of the persons

who would have been entitled to the land if such sale or mortgage had not been made." Before the sale the widow had paid taxes on the land, to the amount of $280.10, out of the income which she had received from the rest of the estate.

The executors of the will of Mary A. Jackson contend that the amount paid by her for taxes should be first deducted from the amount received at the sale of the land and paid to them; that the balance after this deduction should be apportioned into principal and income, in such manner as to determine what amount of principal, invested at the death of Lewis D. Jackson at the current rate for trust funds, would result in a sum realized by deducting the $280.10 for taxes from the sum for which the land was sold; that the amount so determined as principal should be paid to the devisees under the will of Lewis C. Benton, who was residuary legatee and devisee under the will of Lewis D. Jackson and that the amount so determined as income should be paid to the executors of the will of Mary A. Jackson.

The executor of the will of Lewis C. Benton contends that he, as executor, is, and that Benton's heirs and devisees as such, are not, entitled to the entire fund in the hands of the trustee (the petitioner) to be distributed, whether or not payment of said sum of $280.10 to the executors of the will of Mary A. Jackson shall be ordered, and said apportionment between capital and income shall be decreed. The petitioner asks instructions "as to his duty under the circumstances disclosed."

By the terms of the will of Lewis D. Jackson, his wife, Mary A. Jackson, received a legal life estate in possession in all the real and personal property of the testator, with a limited power of disposal of the personal property. The will did not create a trust in the real estate, and the question does not here arise as to whether there was by implication or otherwise a trust created in the personal property. *Whitcomb* v. *Taylor,* 122 Mass. 243. *Allen* v. *Hunt,* 213 Mass. 276. *Conant* v. *St. John,* 233 Mass. 547, 551.

The first issue is whether $280.10 paid by the widow as taxes on this realty should be first taken from the $3,182.28, the balance of the sum received at the sale, and given to her

executors. Ordinary taxes on realty are to be paid by the life tenant. In *Bates* v. *Sharon*, 175 Mass. 293, it is said at page 295: "The taxes on the dwelling-house and land belonging to it were legally assessed to the plaintiff, who, as owner of a life estate in possession, was the owner thereof within Pub. Sts. c. 11, § 13." The tax statutes, though amended several times, were substantially the same as the statute above referred to during the entire period of time the taxes in question were paid. In *Bridge* v. *Bridge*, 146 Mass. 373, where the testator gave his wife an income of $400 a year and the use of his house for life, it was held that amounts paid for repairs, taxes, water rates, etc., should be charges on the income and not on capital. In *Wiggin* v. *Swett*, 6 Met. 194, at page 201 it is said: "Taxes are properly payable out of the rent and income of real estate, and therefore constitute a proper charge upon those who have the actual and beneficial use and enjoyment of the estate for the time being; whether it be in fee, for life, or for years." The executors of the will of Mary A. Jackson contend that when the life estate is unproductive the taxes are a burden and should be paid out of principal. The cases relied on by them do not support this contention. They further cite the case of *Stone* v. *Little-field*, 151 Mass. 485, where property was left in trust for the widow; among the items was a note secured by a mortgage which the trustee foreclosed, and to do so was required to pay two years' back taxes that should have been paid by the mortgagor. It was held that the payment of these taxes should be charged to the principal. Such a result would be just in a case where land is in trust, the *cestui* having no direction or disposal; but in the case at bar the widow alone in her capacity as life tenant has the power under the statute, *supra*, to initiate a sale of the property, and has deliberately refrained from exercising it in order to benefit from an increased value of the land, and has thrust the whole of the burden, incurred through her choice, upon the remainderman. A review of the authorities does not warrant the contention that the widow's estate should be reimbursed for taxes paid.

The next issue is whether the proceeds of the sale should be apportioned between principal and income so as to de-

termine an amount which if invested at the death of the
testator at the annual rate would have yielded at the time
of the sale the amount of the proceeds.    There should be no˙
such apportionment.   The widow received a legal life estate,
in possession of this land.   The statute under which the sale
was made is R. L. c. 127, §§ 28, 31.   Section 31 provides
that the trustee appointed by the court "shall receive and
hold, invest or apply the proceeds of any sale . . . made by
him for the benefit of the persons who would have been.
entitled to the land if such sale . . . had not been made."
This means that the entire proceeds should represent the
corpus of the realty; the remainderman should be ultimately
entitled to them, and the income of the proceeds should
represent the income from the realty and should go to the
life tenant.   It was the intent of the Legislature, in view of
the provision "if such sale . . . had not been made," to
distribute the proceeds as above stated.   In *Whitcomb* v.
*Taylor*, 122 Mass. 243, 250, the plaintiff had a determinable
fee in land which had been sold under St. 1868, c. 287, there
being remainders over.   It was there held that the plaintiff
was not entitled to have the proceeds paid over to him.   "The
proceeds in the hands of the trustee are to be regarded and
treated as real estate, and the plaintiff is not entitled to have
them paid over to him."   This language controls, and, if the
proceeds are to be treated as the realty, the executors of the
life tenant are entitled only to the income from such proceeds.
.  "In a situation like the case before this court there is no
room for the operation of the equitable doctrine that personal
property given in general terms in trust to be enjoyed by
several persons in succession imports an intent on the part
of the testator that the gift should be converted into author-
ized investments and the income of the property so invested,
or retained, be so divided or apportioned between the life
beneficiaries and the remaindermen that the corpus of the
fund shall be kept intact."   *Old Colony Trust Co.* v. *Shaw*,
*ante*, 158, 167.

The final issue is whether the proceeds of the sale shall
be distributed to the executor of the will of the remainder-
man or to his devisees.   The life tenant predeceased the

remainderman. The right to the proceeds vested in the remainderman at the death of the life tenant, and the statute under which the sale was made ceased to be applicable. The property at that time was personalty in fact and the executor of the will of the remainderman is entitled to it. *Gray* v. *Whittemore,* 192 Mass. 367, 384.

The petitioner is instructed that the $280.10 on account of taxes is not to be paid to the executors of the will of Mary A. Jackson; there should be no apportionment of principal and income between the executors of the will of Mary A. Jackson and the executor of the will of Lewis C. Benton; and the entire proceeds should be distributed by the petitioner to the executor of the will of Lewis C. Benton. Costs as between solicitor and client are to be determined by the Probate Court.

*Decree accordingly.*.