JAMES F. CREED, trustee, *vs.* MARY E. CONNELLY & others.

Suffolk.   May 19, 1930. — July 2, 1930.

Present: RUGG, C.J., CROSBY, CARROLL, WAIT, & SANDERSON, JJ.

*Devise and Legacy,* Life estate.   *Trust,* Construction of instrument creating trust.   *Capital and Income.*

A testator, who died in 1914, leaving a widow and as his next of kin a brother and two sisters, by his will placed the residue of his estate in trust "to pay the net income thereof to" his widow "during her life, or while she remains unmarried," and on her death or remarriage, to

distribute the property, one half to one sister and one half to the children of the other sister. The trustee was not given power to sell and no special reference was made or directions given respecting real estate which was part of the residue of the estate. The trustee received from the executor personalty valued at $150,000; and realty valued at $41,300 which included a parcel of vacant land which had been owned by the testator at the time of his death and was then subject to a mortgage of $26,000, the equity being appraised at $20,000. The trustee used due diligence and sound judgment with respect to the vacant land, and finally sold it in June, 1924, for $60,000, receiving $34,000 as net proceeds after the mortgage note was paid. During the period preceding the sale, he had paid in taxes and mortgage interest $30,108, and had received for rentals $4,563 which he had paid to the widow. In November, 1924, during the life of the widow, he brought a petition seeking instructions as to whether he might apportion between capital and income the whole or such part of the expenses paid out of income of the trust estate for carrying the vacant land as would reimburse the life tenant for the loss of income thereby caused. The widow died in 1929 before determination of such petition. *Held,* that

(1) The fact that the widow's rights became vested when the property was sold in her lifetime justified a ruling by the judge that her death did not preclude her personal representative from seeking to establish the rights which she as life tenant had had under the petition;

(2) The personal representative of the widow was not barred by laches from procuring a determination of rights under the trustee's petition;

(3) Such representative of the widow was not estopped, by her having assented to a first account of the trustee, afterwards allowed by the court, which contained all the items of expenditure as to the vacant land for the period of the account and showed them charged to income, from contending that proceeds of the sale made after the period covered by the account, but long before her death, should be apportioned between principal and income;

(4) In deciding whether, upon a sale of unproductive real estate by trustees who have paid carrying charges thereon out of income, this loss to income shall be restored in whole or in part from the proceeds of sale, and whether there shall be an apportionment of such proceeds between capital and income, the controlling consideration is the intention of the testator;

(5) While, as an aid to the ascertainment of such intention, use may be made of the rule in this Commonwealth that a life tenant will receive income from the date of the testator's death, because that is presumed to be his intention unless he has otherwise provided, such rule as to a presumed intention does not necessarily mean that the life tenant is entitled to such income on each item of unproductive property in the trust estate, especially if the unproductive part is small compared with the whole;

(6) The terms of the will above described indicated that the testator

looked upon the whole residue of his property as the trust estate, and that he gave the widow the income of this property, thus carrying with the gift its usual incident of requiring payment from it of the taxes and other necessary carrying expenses of the whole estate; distinguishing *Edwards* v. *Edwards*, 183 Mass. 581;

(7) The income to which the widow was entitled from the time of the testator's death was the net income produced by the trust estate created by the testator; the carrying charges on the unproductive land were chargeable to income, and no part of the net proceeds of sale were to be paid the personal representative of the widow to reimburse her estate for her loss of the income paid for carrying the vacant land;

(8) There should be no apportionment of the proceeds of sale between capital and income; the only right of the beneficiary for life in those proceeds was to receive the net income therefrom during her life.

PETITION for instructions, filed in the Probate Court for the county of Suffolk on November 13, 1924, by trustees under the will of C. James Connelly, late of Boston.

The petition was heard by *Dolan*, J., a stenographer having been appointed under G. L. c. 215, § 18, as amended.

Among other rulings by the judge were the following:

"I rule that the representatives of the estate of the life beneficiary are not estopped to require an apportionment by any alleged laches on the part of the life beneficiary to procure a prompt determination of the trustees' petition now before the Court. The remaindermen had an equal right and duty, if such it could be held, as well as equal opportunity to secure such an adjudication after the filing of the petition.

"I further rule that the assent of the life beneficiary to the trustees' first account which contained all the items of expenditure on account of the land and showed them as charged to income (that is for the period covered by that account) and the allowance of said account does not estop her estate from demanding that the proceeds of the sale made after the period covered by said account, but long before her death, should be apportioned between principal and income."

Other material facts found and rulings made by him are stated in the opinion. From a final decree, the respondents,

other than the administrators with the will annexed of the estate of Agnes G. Connelly, appealed.

*O. Storer,* for the respondent Mary E. Connelly.

*J. L. Sheehan,* for the respondents James E. Buckley and others.

*J. P. Bell & J. J. Mansfield,* for the administrators with the will annexed of the estate of Agnes G. Connelly.

SANDERSON, J.   This is a petition filed in November, 1924, by trustees under the will of C. James Connelly for instructions as to whether they may apportion between capital and income the whole or such part of the expenses paid out of income of the trust estate for carrying certain lands, sold by them in June, 1924, as will reimburse the life tenant for the loss of income thereby caused.

The testator died July 10, 1914, without issue, leaving as his heirs his widow, a brother and two sisters.   The personal estate was appraised in the trustee's inventory at $150,000, and the real estate at $41,300.   The parcel of land with which this petition is concerned was owned by the testator at the time of his death and became a part of the trust estate subject to a mortgage for $26,000, the equity therein being appraised for $20,000.   After bequests to various persons and objects the testator used the following language in disposing of the residue of his estate: "All the rest and residue of my property, real, personal and mixed, of which I die seized and possessed, or to which I may be entitled at the time of my death, I give to my Trustees hereinafter named, but in trust, nevertheless, to pay the net income thereof to my beloved wife, Agnes G. Connelly, during her life, or while she remains unmarried, and on the death or re-marriage of my said wife, I direct that the said residue of my property be distributed as follows: — One-half (½) each to my said sister, Mary E. Connelly, and to the children of my said sister, Annie E. Buckley, their heirs and assigns forever." He gave the trustees no power to sell, and made no special reference to the real estate in question and gave no directions concerning it.   The testator's widow died August 22, 1929, testate, and without issue, leaving an estate of the estimated value of $75,000.

The land in question was a vacant lot situated on the Fenway, in Boston, and when sold by the trustees, in 1924, brought $60,000, leaving $34,000 as the net proceeds after the mortgage note was paid. The judge found that "the trustees made diligent efforts to sell the real estate after the death of the deceased and that they used sound judgment in dealing with the same and in selling when they did." During the hearing he ruled that a finding substantially to the same effect made by the judge of probate for the period covered by the trustee's first account running to April 1, 1923, settled the issue of the trustee's diligence and fidelity in dealing with this land for the period covered by that account. From the date of the testator's death until the real estate was sold, the trustees paid out in taxes on this land and interest on the mortgage note $30,108.56, and received $2,063.56 as rent for the use of the vacant land for bill boards, and $2,500 deposited on proposed purchases of the land which were not consummated. This total sum of $4,563.56 was paid to the life beneficiary as income.

This petition for instructions was filed by the trustees on November 13, 1924, the remaindermen being named as respondents, but the life beneficiary by error not being so named. Her administrators with the will annexed have now been made parties by amendment. The finding was made that she knew of the pendency of the proceeding and that it was in fact started at her request. This petition was not set down for hearing until after the death of the life beneficiary in 1929, and since that time one of the trustees has died, leaving the petitioner Creed as sole surviving trustee. The judge of probate decided that the facts of this case brought it within the principles stated in *Edwards* v. *Edwards*, 183 Mass. 581, and that there were no special circumstances to bring it within the principle of the cases of *Jordan* v. *Jordan*, 192 Mass. 337 and *Parkhurst* v. *Ginn*, 228 Mass. 159. He ordered that a decree be entered that the surviving trustee pay out of the net proceeds of the sale of the land in question to the representatives of the estate of the deceased life beneficiary the

amount of the net carrying charges of the land before sale, after deducting the amount of income received .and paid to the life beneficiary, and that the remaining sum be apportioned between capital and income. A decree was entered in accordance with this order, from which the residuary beneficiaries under the trust appealed.

The fact that the widow's rights became vested when the property was sold in her lifetime distinguishes this case from *Ogden* v. *Allen*, 225 Mass. 595, and justified the ruling of the judge that her death did not preclude her personal representatives from seeking to establish the rights which the life tenant had under the petition; and we also are of opinion that his ruling that laches was not a bar to the maintenance of the petition was right. See *Patterson* v. *Pendexter*, 259 Mass. 490, 493.

In deciding whether, upon a sale of unproductive real estate by trustees who have paid carrying charges thereon out of income, this loss to income shall be restored in whole or in part from the proceeds of sale, and whether there shall be an apportionment of such proceeds between capital and income, the controlling consideration is the intention of the testator. As an aid to the ascertainment of that intention it is said to be a well established general rule in this Commonwealth that a life tenant will receive income from the date of the testator's death, because that is presumed to be his intention unless he has otherwise provided. *Edwards* v. *Edwards*, 183 Mass. 581, 583. It seems to be equally well established in the absence of a different testamentary direction as to apportionment between a life tenant and reversioner that taxes, insurance and all incidental expenses of maintenance of real property forming part of the trust estate are to be paid from income. *Jordan* v. *Jordan*, 192 Mass. 337, 344. It is the duty of a life tenant in possession without power of sale to pay taxes on unimproved and unproductive land without any right of reimbursement. See *Spring* v. *Hollander*, 261 Mass. 373. A note of the testator is a debt to be paid from his personal estate if it is sufficient, and this holds true even though

the note be secured by mortgage, except in so far as this rule is modified by G. L. c. 191, § 23. *Hewes* v. *Dehon*, 3 Gray, 205, 207. If the testator had intended to require the trustees to convert this real estate into a trust fund he would probably have given them power to sell or in some way referred to the matter. "If land is given in trust to collect the rents and profits for accumulation, or for other purposes, a power to sell the land is not to be implied. Unless such a power is affirmatively given, it does not exist." *Jones* v. *Atchison, Topeka & Santa Fe Railroad*, 150 Mass. 304, 307.

In the case at bar the annual income paid to the widow after the carrying charges on the unproductive land had been paid was a substantial sum. The testator must have known that the value of the unproductive part of the property was but a comparatively small part of the whole trust estate. *Green* v. *Crapo*, 181 Mass. 55, 60. An intention of the testator to prefer his own relatives to those of his wife may be inferred from the provision that the income to his wife would cease upon her remarriage. The presumed intention of the testator that a life tenant shall have the income of the trust property from the time of his death does not mean that he is entitled to such income on each item of unproductive property in the trust estate, especially if the unproductive part is small compared with the whole. The terms of the will indicate that the testator looked upon the whole residue of his property as the trust estate, and he gave the widow the income of this property, thus carrying with the gift its usual incident of requiring payment from it of the taxes and other necessary expenses of the whole estate.

We think that the case is governed in principle by *Jordan* v. *Jordan*, 192 Mass. 337, 344, where the rule was said to be "in the absence of a different testamentary direction or of an agreement as to apportionment between the tenant for life and the reversioner, ordinarily taxes, insurance, and all incidental expenses of the maintenance of real property, which forms a part of an estate held in trust, whether left by a testator or purchased by the trustees, are to be paid from

income." See also *Parkhurst* v. *Ginn,* 228 Mass. 159, 170; *Spring* v. *Hollander, supra.*

The case is distinguishable in its facts from *Edwards* v. *Edwards, supra,* where the trustees were directed to invest and reinvest the trust property in such securities as are allowed to savings banks; there is no such direction in the case at bar. In that case the personal estate was in speculative accounts with brokers and the real estate was much the larger part of the whole estate, and the most valuable part of this was unproductive. Under the terms of the will in that case the establishment of a trust fund was obviously required by the testator. See also *Kinmonth* v. *Brigham,* 5 Allen, 270. In the case at bar there is nothing in the will to indicate that the testator intended to require that the unproductive land should be speedily converted into a fund. The time when a petition for its sale should be filed seems to have been left largely to the judgment of the trustees acting with fidelity and in the exercise of a sound judgment. *Green* v. *Crapo,* 181 Mass. 55, 60, 61, 62. It follows that the income to which the beneficiary is entitled from the time of the testator's death is the net income produced by the trust estate created by the testator; that the carrying charges on the unproductive land are properly chargeable to income, and no part of the net proceeds of sale are to be paid the personal representatives of the widow to reimburse her estate for her loss of the income paid for carrying the vacant land. The petition does not specifically ask for instructions as to an apportionment, but that matter was dealt with in the Probate Court and the parties may be saved the expense and delay involved in coming to this court again if the question is decided. Similar reasons to those stated in discussing the right of the widow's estate to reimbursement lead us to the conclusion that there should be no apportionment of the proceeds of sale between capital and income, and that the only right of the beneficiary for life in those proceeds was to receive the net income therefrom during her life.

The decree is reversed and a decree is to be entered instructing the surviving trustee that he is not to pay to the representatives of the estate of Agnes G. Connelly any sum

by way of reimbursement for expenses in carrying the vacant land, and is not to make any apportionment of the proceeds of sale between capital and income. Costs as between solicitor and client are to be in the discretion of the Probate Court.

*Ordered accordingly.*