## Develon's Estate

*Franklin L. Wright* and *J. Charles Murtagh,* for accountants.

*Samuel H. High, Jr.,* of *High, Dettra & Swartz,* and *William H. Lathrop,* of *Montgomery & McCracken* for exceptants.

*M. Paul Smith,* guardian ad litem.

HOLLAND, P. J., January 29, 1936.—Thomas Develon, Jr., died on February 12, 1931, having made his last will and testament bearing date May 17, 1930, duly probated February 18, 1931, on which the present letters were granted to accountants. . . .

The account shows a balance of principal of personal estate amounting to $703,396.83. From this has been subtracted a deficit of principal of real estate amounting to $186,755.08, leaving a net balance of principal for distribution amounting to $516,641.75, composed of the unconverted investment securities and other assets set forth in the account, carried at $514,252.20, and cash. The summary of the account does not contain a statement of the balance of income for distribution, if any. It shows a balance of income from personal estate amounting to $81,-631.60, out of which was taken a deficit of income from real estate amounting to $63,983.49. Thus the net balance of income from both personal and real estate is $17,-648.11. But the distribution account shows that Agnes R. Develon has received $13,510.47 and that Jane D. Ward has received $6,500, which we presume, although it is not indicated, to be on account of income payable to them as

beneficiaries of the residuary trust. Since this is being treated as a hybrid executors'-trustees' account, the total of $20,010.47 so distributed must be deducted from the balance of income, thus leaving an overdraft of income in the amount of $2,362.36, which is due accountants.

Exceptions to the account were filed at the audit nunc pro tunc by consent of all parties concerned. Exceptants are the two individual coexecutors in their capacities as life beneficiaries under the terms of the trust, and Thomas Roden Bromley and Gladys Rebecca Bromley, who are entitled since the death of testator's sister to the income from the one third of the residuary estate originally held in trust for her.

The exceptions are to credits claimed for disbursements from income to pay the carrying charges on two tracts of unproductive real estate owned by testator at the time of his death:

1. The so-called Whittaker tract, on which accountants paid a total of $21,657.50 in carrying charges. Exceptants deduct therefrom the sum of $4,229.42, being interest on a mortgage on that tract which exceptants admit to be a proper charge against income, thus leaving a balance of $17,428.08 objected to.

2. The so-called Stenton tract, on which accountants paid a total of $31,023.74 in carrying charges. Exceptants deduct therefrom the sum of $1,363.72, being income produced by said property, thus leaving a balance of $29,660.02 objected to. The third exception is to the failure of accountants to charge both these sums to principal.

The admitted facts concerning these two tracts are that both are totally unimproved and in fact undeveloped, being held for the ultimate purpose of subdivision into building lots. The Whittaker tract has produced no income of any kind; the Stenton tract has produced a slight amount of income resulting from renting part thereof for a billboard and another part thereof for an outdoor golf driving range.

The question raised by these exceptions is whether the carrying charges of unproductive real estate forming part of the corpus of a trust should be borne by income or by principal. Again we are met with the confusion resulting from this account being partially an executors' account and partially a trustees' account. Were it restricted, as it should be, to items properly accounted for in an executors' account, no such question could, of course, be presented at this time, and could only be properly raised upon a trustees' account. However, in accordance with our intention already expressed to overlook the technical defects, we will go into the merits of the question now.

It may be noted at this time that the two tracts of land in question are but a small part of the total real estate owned by testator at his death, which is all a part of the residuary trust. Only two properties among the entire real estate yield an income in excess of their carrying charges, the others all show deficits. Nevertheless the two tracts involved in the exceptions are the only ones which are unimproved and unproductive, and although most of the improved properties also show a deficit, exceptants are confining their objections to the unimproved and unproductive properties and are not objecting to the allocation of the deficits of the other properties to income, for the reason that these properties are improved and producing something.

Of course the first inquiry should be directed to testator's will. The devise of his residence to his trustees in trust for the widow's use and occupancy, with the provision that all carrying charges shall be paid by the trustees out of income from the residuary trust, has already been noted. In clause tenth, the residuary trust is set up, the residuary estate being given to the trustees "to hold, invest, reinvest and pay over the same". Both with respect to the two thirds thereof held for the widow and the one third held for the sister, the directions are to "pay the net income therefrom" to these beneficiaries.

Likewise, in setting up the further trusts after the deaths of the widow and sister, the directions are to pay the "net income" to the beneficiaries.

The powers given to the executors and trustees in clause thirteenth include the "absolute discretion to hold unconverted . . . as part of the corpus of the trusts . . . any and all securities that I may possess at the time of my decease" and the authorization "to sell the whole or any part of any real estate which I may own at the time of my death". There is also authority given the trustees, "in the exercise of their sole judgment", to expend such sums out of principal "as in the opinion of my trustees may be proper for the comfort, maintenance and support of any such beneficiary or the members of his or her immediate family, in case of illness, accident, loss by fire or other emergency".

Thus there are no express provisions in the will covering the carrying charges of real estate in the residuary trust as there are in the trust of the residence.

It is a well-settled general proposition that carrying charges of real estate must be paid by the life tenants, or out of income where it is held in trust. Exceptants freely admit this and they do not quarrel with the accounting insofar as the carrying charges of all real estate other than these two tracts have been charged against the income produced. Yet they urge that because these two tracts are almost wholly unproductive the expenses of maintaining them should not be charged according to the general rule.

The question seems important, yet there is a surprising want of precedent in Pennsylvania. The only Supreme Court case to be found having any bearing on the problem is Neel's Estate (No. 2), 207 Pa. 446 (1904). There trustees bought in land, owned by a partnership of which the decedent apparently had been a member, at a receiver's sale in order to protect the interest of the estate therein. Subsequently the land was sold at a profit which was considered as corpus of the trust. In

a very brief opinion by Potter, J., it was held that the net gain of the transaction should be treated as corpus, but that interest on money borrowed to make the purchase, and which had been charged to income, should be regarded as part of the expenses and deducted in arriving at the net profit. There is no discussion in the opinion at all. It contains this additional bare statement, at page 447: "The amount of the taxes paid upon unproductive real estate was, we think, properly charged to the income". The report does not disclose how any question of taxes arose. This case has not been cited since.

In the Superior Court there is McDannel et al. v. Weddige, 79 Pa. Superior Ct. 494 (1922), where decedent died intestate seized of vacant lots in Erie and a farm outside that city. Her surviving husband elected to become tenant by curtesy of all the real estate. He occupied the farm and paid taxes thereon, but failed to pay taxes on the city lots, whereupon decedent's heirs in remainder petitioned for the appointment of a sequestrator under the Act of May 24, 1887, P. L. 188, to collect the rents, issues, and profits of the real estate for the protection of their remainder interests. The question before the Superior Court was whether the "life tenant may enjoy all the benefits accruing to him by reason of his tenancy without paying the taxes on the nonincome-producing land in the City of Erie". It was contended by the defendant husband that the Act of 1887, supra, did not compel treating all the land held by him as tenant by the curtesy as a unit, and that each tract should be considered separately, and further that his obligations were discharged by payment of taxes on the income-producing tract. The court held that to accomplish the purpose of the Act of 1887 all decedent's land must be considered as one piece: any other interpretation would nullify its effect. It is pointed out that these obligations were incurred by defendant's own act. The court cites, as in harmony with its conclusion, In re Morton's Estate, 74 N. J. Eq. 797, which holds that "where the trust es-

tate to whose income the life tenant is entitled consists in part of improved property, productive of revenue, and in part of unimproved property producing no income, the life tenant is bound to pay the taxes on the unimproved property from the income derived by him from the revenue producing property, so far as such income extends." This is on the theory that the life beneficiary of the income becomes the equitable life tenant, subject to all the duties of a life tenant, including payment of taxes and interest on incumbrances.

In the lower courts there are two cases: Simpson's Estate, 23 Dist. R. 750 (1914), and Taheny's Estate, 12 D. & C. 243 (1929), both in the common pleas of Philadelphia County. In Simpson's Estate, testator bequeathed a fund to trustees to pay the income therefrom to a niece for life. The trustees duly obtained authority to and did invest almost the entire fund in the purchase of a house for the beneficiary who occupied it over a period of years, but paid no rent, no taxes and no water rent. To save the property from the consequences of delinquency in payment of the last two items, the trustees advanced the necessary sums, which they subsequently charged to principal. It was held that to pay taxes and water rent out of principal, instead of deducting the same from income, was in effect to pay the beneficiary the gross income from the estate, whereas she was entitled only to the net income, and to pay the life tenant a part of what should be preserved intact for the remaindermen.

Taheny's Estate came up on petition of the life beneficiary of a trust inter vivos to be refunded the amount of taxes on vacant lots paid by the trustee out of income over a period of many years before they were finally sold. It was held flatly that it was the duty of the trustee to preserve these lots with prospective value for the estate and to use income from other sources to do so, therefore the beneficiary was not entitled, now that a fund was realized by a sale of the lots, to be reimbursed for the loss of income suffered.

Two other cases should be mentioned, both in the Orphans' Court of Philadelphia County: Leech's Estate, 4 D. & C. 1 (1923), and Dornan's Estate, 19 D. & C. 539 (1933). In both cases part of the corpus of the trust consisted of mortgages which the trustees foreclosed, being compelled to buy in the properties securing them. In Leech's Estate the properties were sold at a substantial profit which was claimed by the representatives of the deceased life tenants on the ground that under the will they were given the "income and profits" of the principal held in trust for them. The late Judge Gest, speaking for the court, reviews and discusses in inimitable fashion all the authorities, concluding that the testator's language intended to give the life beneficiaries no more than the income and that, under the usual rule applicable to increase in the value of trust assets, such increase belongs to the remaindermen. Let it be noted, however, that the contest there was over the profits and that no question of charging the expenses of carrying the properties between foreclosure and sale to income or principal was discussed; nor does the report show that the properties were unproductive or incapable of carrying themselves.

But in Dornan's Estate we come down to present-day conditions and find the foreclosed property still unsold at the time of filing the account upon termination of the trust. Therefore no question of profits arose, and instead, whether the deceased life beneficiary had any interest in the property. It was concluded that the life tenant did have such an interest and the property was awarded back to the trustee for further accounting after it could be sold, at which time the proportionate interests of life tenant and remaindermen would be calculated. Subsequently, however, this was accomplished by agreement of the parties.

So much for the Pennsylvania authorities which may bind or guide the decision in the instant case. Leaving them aside for the moment, where does a consideration of the question or principle lead?

The American Law Institute Restatement of the Law of Trusts contains the following:

"§233 . . . Principal and Income

"(1) Except as otherwise provided by the terms of the trust, if property is held in trust to pay the income to a beneficiary for a designated period and thereafter to pay the principal to another beneficiary,

"(a) the former beneficiary is entitled to, and only to, the net income during such period, and

"(b) the latter beneficiary is entitled to the principal on the expiration of such period.

"(2) The net income is ascertained by subtracting expenditures allocable to income from receipts allocable to income.

"*Comment:* . . . c. *Current Expenses.* Ordinary current expenses in connection with the administration and management of the trust are payable out of income. These include regularly recurring taxes assessed against any portion of the principal, water rates, premiums on insurance against fire or other casualty, interest on mortgages and other indebtedness, ordinary repairs, and the trustee's commissions computed upon income. . . .

"m. *Unproductive Property.* Ordinary current expenses as well as extraordinary expenses incurred in connection with unproductive property are payable out of principal, unless it is otherwise provided by the terms of the trust."

Thus there is eminent secondary authority for a distinction between productive and unproductive property when it comes to charging "ordinary current expenses" to income. While there is no occasion for a discussion of the fertile field of litigation involving the apportionment of dividends between income and principal, it is noteworthy that Pennsylvania has consistently rejected the application of any rule of thumb and has instead evolved the so-called "Pennsylvania Rule", which, albeit difficult of practical application, certainly approaches closer to complete equity between the successive beneficiaries. It

is easy to say, simply and finally, that *all* ordinary current expenses shall be charged to income; but it is even more inequitable than to say that all cash dividends are income and all stock dividends principal. If the rule of thumb is rejected there, then it should be rejected here, too.

Equally important with the preservation of the corpus of this trust for the remaindermen is the payment of income to the life beneficiaries. That is almost always true as a general proposition and, when the facts peculiar to this case are considered, the life beneficiaries appear entitled to even more than the ordinary share of consideration. Testator left no descendants. He had at his death a personal estate of about $2,000,000 and all the real estate already mentioned, but which was not valued anywhere in the record of this case. The provisions of the will amply bear out exceptants' contention that the widow was and is the primary object of testator's concern and bounty; next came testator's sister, entitled to the income from the other one third of the residuary trust; and now, since her death, come testator's stepson and wife, the Bromleys, and his cousin and wife, the Downs. Who are the future remaindermen? Every one will be a person totally unknown to the testator and who, furthermore, was not even living at his death, with the possible exception of the donee under the widow's power of testamentary appointment. It is not reasonable to suppose that testator's primary concern was with the corpus of this residuary trust, which will go to descendants of the Bromleys and the Downs whom testator never knew and who moreover may never come into being. On the other hand it is entirely reasonable to construe the will as showing testator's intent to prefer his wife, his step-son and daughter, and his cousin and cousin-in-law.

The will gives the residue to the trustees "to hold, invest, reinvest and pay over the same"; the trustees are directed to "pay the net income" to the successive life beneficiaries; we have seen the various subdivisions

through which the entire residuary principal is to go; the will specifically gives the trustees "absolute discretion" to hold unconverted as part of the corpus "any and all securities that I may possess at the time of my death", yet is significantly silent as to holding unconverted real estate owned at his death. The whole dispositive scheme is inimical to the continued holding of these two tracts of real estate as part of the corpus of this trust. Clearly the testator's intent cannot be fully effectuated until these tracts are sold and the proceeds invested in income-producing property which can readily lend itself to the future subdivisions of the corpus. Furthermore, no such investment can be regarded as anything but a speculative venture and as such, if for no other reason, it should not be continued as a trust investment.

Section 240 of the A. L. I. Restatement of the Law of Trusts makes it the duty of a trustee to the life beneficiary to liquidate an unproductive investment and place the proceeds in an income-producing form of property. There is, of course, a practical obstacle today to the desirability, if not duty, to liquidate the investments in these two tracts of land, an obstacle which has confronted the solution of such problems during these six lean years and which will be removed only when a market for real estate reappears. Whatever may be the duty owed the life beneficiaries to produce income, the duty to the remaindermen, in futuro though they be, still remains. These two tracts are, by opinion of all concerned, that part of all the testator's real estate, improved or unimproved, productive or unproductive, which will, when the resuscitation comes, be the most readily and profitably salable. They are assets of considerable potential value, to be jettisoned only as a last resort just before the ship is swamped. If and when the port of profitable sale is reached, it will be the remaindermen who will benefit primarily through enhancement in value of principal. All that the life beneficiaries stand to gain is the additional income which this enlarged principal will be able to earn,

and it may well be that at least some if not all of them will not live to see that day. To impose the entire burden of carrying this load meanwhile on the life beneficiaries for the ultimate gain of the remaindermen appears grossly inequitable. There would then be no just proportion between burden and benefit.

In several other jurisdictions this question has been before the courts, notably in New York and Massachusetts. Just what principles do govern in those States is, however, not a matter of easy discernment. From the latest expression of the New York Court of Appeals, In re Satterwhite et al., 262 N. Y. 339, 343 (1933), it appears that "the intention of the testator as expressed in the language of the will, interpreted in the light of surrounding circumstances" controls. Thus, if there is "an imperative power of sale or equitable conversion", the testator is deemed to have intended the charges of carrying unproductive real estate not to be borne by the life beneficiary alone; but if there is no conversion, "the only inference is that testator intended to benefit the principal of his estate and not the life tenants": page 343. In re Jackson's Estate, 258 N. Y. 281, and Lawrence v. Littlefield, Admr., 215 N. Y. 561, are mentioned by the court as examples of the former, and to these may be added Furniss et al. v. Cruikshank, 230 N. Y. 495, and Spencer, 3d, et al. v. Spencer, 219 N. Y. 459.

The Satterwhite case arose at a later date in the order of events than the one now in question, since the unproductive real estate had been already sold and the question was whether past charges should now be charged to the life tenant or apportioned to capital. Two pieces of unproductive, but not unimproved, real estate were involved, both residences of testatrix, one in New York and one in Palm Beach. The will directed that the former be sold within three years after testatrix's death, but gave merely authority with wide discretion to the trustee to sell the latter. Under these facts the court held that, as to the New York residence, there was an equitable con-

version at the end of three years and that, therefore, the proceeds of sale should be apportioned so as to charge principal with the carrying charges after the three years expired, but, as to the Palm Beach residence, there being no evidence of intent that it be sold before the trustee might deem it necessary, and two years and eight months not being an unreasonable delay in obtaining a purchaser who would pay $425,000 for a residence, the carrying charges should be charged against income. The court did not, however, rest on that alone. It pointed out that the objecting beneficiary who suffered from the allocation of the carrying charges to income "does not appear to be the special object of testatrix's bounty", whereas in the Jackson case, supra, where the carrying charges were put on principal, the beneficiary was "the first object of his [the testator's] solicitude", which justified the inference that he should have the advantage over the remainderman. Still another distinction was noted in the Satterwhite case: the unproductive real estate there was used as family homes and was not bought for speculation, as was the real estate in the Jackson case.

Just what constitutes an equitable conversion in New York is not clear. But if an equitable conversion is the test by which it is there determined whether the charges of carrying unproductive real estate shall be charged to principal or income, as it is professed to be, then New York has gone to surprising lengths to find a conversion in order to reach an equitable result between life beneficiary and remainderman. Were the instant case to arise in New York, we have no doubt that a conversion would be found and the burden of carrying charges placed on principal for that reason. Indeed it is not impossible to find a basis for a conversion under the requirements therefor established by the law of Pennsylvania, on grounds of necessity to accomplish the testator's general intent, notwithstanding that the will simply gives authority and no express direction to sell the real estate in question. However, the impracticability, if not basic in-

accuracy, of such a test is cogently demonstrated by the New York situation.

Among cases in other New York courts are In re Chapal's Will, 243 App. Div. 802, 280 N. Y. Supp. 811 (1935), where trustees applied for instructions respecting the allocation of carrying charges on real estate taken in foreclosure in the event that the properties should be sold in the future. It was held that the absence in the will of a specific provision to pay such charges out of principal, when it was specifically provided that premiums paid for securities bought should be so charged, showed testator's intent that the general rule govern and the charges be paid out of income. Yet the court pointed out, on page 813, that:

"The general rule does not apply where the carrying charges are incurred primarily, if not exclusively, to preserve the corpus and keep it intact for the benefit of the remaindermen, or where other special equities are involved which make it unjust to compel the income to bear the carrying charges".

In re Haffen's Will, 155 Misc. 774, 280 N. Y. Supp. 357 (1935), goes so far as to hold that the deficit of carrying charges over income from real estate taken by conveyance from a defaulting mortgagor should be charged to principal and not supplied out of income from other productive assets of the trust, without even considering the provisions of the will. Carrying charges were also charged to principal in In re Lott's Estate, 148 Misc. 1, 266 N. Y. Supp. 474 (1933), and In re Arnolt's Estate, 127 Misc. 579, 217 N. Y. Supp. 323 (1926), although in the latter case it was specifically concluded that the will did not work an equitable conversion. In the following, such charges were held chargeable to income: In re Brewster's Estate, 148 Misc. 390, 266 N. Y. Supp. 573 (1932), but on the ground that the real estate was not unproductive since it was occupied by the life tenant as a homestead; In re Schuster's Will, 123 Misc. 314, 205 N. Y. Supp. 268 (1924), but because

the will expressly directed the life tenant to pay all carrying charges out of income; In re Fleet's Estate, 117 Misc. 273, 192 N. Y. Supp. 206 (1921), which rests flatly on the failure of the will to work an equitable conversion and recognizes that as the sine qua non for compelling principal to bear the charges of carrying totally unproductive real estate. The latter was not a case, however, of a devise to a trustee to pay income and principal to successive beneficiaries, but of the devise of a legal life estate in the entire residue to testator's widow, with remainder over.

Massachusetts likewise seeks the testator's intent as a starting point. The latest case giving full attention to the problem is Creed, Trustee, v. Connelly et al., 272 Mass. 241 (1930). Testator there gave the residue of his estate in trust to pay the net income to his wife for life with remainder over on her death. Included among testator's real estate which became part of the residuary trust was a vacant lot, taxes and mortgage interest on which were paid out of income by the trustees, who received, as here, some income from rental for billboards and a further sum by way of forfeited deposits on unconsummated sales, which was all paid the life beneficiary as income. The carrying charges far exceeded the income, and when the lot was finally sold the trustees petitioned for instructions regarding allocation of the carrying charges to principal or income, or their apportionment. The court held that the carrying charges were properly chargeable to income and no part of the proceeds were due the representatives of the since-deceased life beneficiary.

Edwards et al., Trustees, v. Edwards et al., 183 Mass. 581 (1903), raised the same question in the same way, but the court held that the proceeds of the sale should be apportioned, in a manner which need not be gone into, so that the charges are not put against income. The reasoning is that when in Massachusetts a life tenant is given annual income from a fund established therefor, the in-

come is to be computed from testator's death, and the testamentary directions "to invest and reinvest" the principal in securities legal for savings bank investments, and to pay "the whole net income therefrom" to the widow for life, could not contemplate the inclusion of unproductive land as a permanent investment. This case was distinguished in Creed v. Connelly, because in the Edwards case the testator obviously required the establishment of a trust fund, whereas in Creed v. Connelly there was nothing in the will to indicate that testator intended to require converting the unproductive land into a fund; and it was also pointed out that in the Creed case there was not even a power to sell real estate given the trustees.

Stone v. Littlefield, 151 Mass. 485 (1890), was not cited in Creed v. Connelly. There the trustees foreclosed a mortgage held in the trust and had to pay delinquent taxes. It was held, at page 488, that the taxes should be deducted from principal and not from income, simply because: "It is more just that a loss of this description should be held to diminish the corpus of the trust estate, so that the life tenant will receive less income, and the remainderman less principal. A profit or gain upon an investment would go in the same way".

Spring, Trustee, v. Hollander et al., 261 Mass. 373 (1927), illustrates the difference between cases such as the foregoing, where property was devised in trust to pay the income to a life beneficiary, and a case like this, where the real estate whose carrying charges are in question was devised for life. The same result was reached as in In re Fleet's Estate, supra, likewise a case of a legal life estate, although without benefit of absence of an equitable conversion, and for the reason that the life tenant is the one with statutory power to initiate a sale, whereas a cestui que trust is without such power, and the possibility of a sale of the unproductive realty lies wholly with the trustees.

Further detailed examination of other authorities would not be profitable. They are collected in 17 A. L. R. 1384, 1394, supplemented by 94 A. L. R. 311, 316. See also 80 University of Pennsylvania Law Rev. 987, 991, and "Developments in the Law of Trusts, 1934", 48 Harvard Law Rev. 1162, 1195. There is an article in 40 Yale Law Journal 275, "Apportionment between Principal and Income of Proceeds Derived from the Sale of Unproductive Realty Held in Trust", which was not available to this court, but may throw some light on the problem.

The New York test of equitable conversion is plainly unsatisfactory as a solution, and even the more flexible approach of Massachusetts cannot be said to offer a sufficient answer when it can produce cases like Creed v. Connelly and Edwards v. Edwards, so nebulously distinct from one another. What, if anything, these cases do show conclusively is the merit of the simplicity and clarity of section 233, comment m, of the A. L. I. Restatement of the Law of Trusts, quoted above, and further that some way has been and should be sought to alleviate the plain injustice to the life beneficiary which results from an unbending application of the general rule that all expenses of carrying all trust property shall be charged to income without regard for other factors.

Our inquiry into the merits of the case at bar on principle leads to the conclusion that the exceptions should be sustained. The inquiry into the authorities of New York and Massachusetts leads to the conclusion that in both jurisdictions the facts here involved would be sufficient to produce a like result, notwithstanding the difference of approach with which disagreement has been expressed. It remains to determine whether we are bound to decide otherwise.

Neel's Estate (No. 2), 207 Pa. 446, as already stated, involved the allocation of a profit made on the sale of land bought by the trustees to protect the estate's interest in the defunct partnership-owner. True, the land was

apparently unproductive, although there is just that bare statement in the report, and the taxes were held properly chargeable to income. Yet the interest on the money borrowed to carry the land was charged to principal. Why this distinction was made between two items which both certainly are "ordinary current expenses" (see Restatement of the Law of Trusts §233, comment e, supra), equally connected with the management of the trust, is unexplained. The liability for interest, as well as that for taxes, was incurred in the same transaction and for the same purpose, the preservation of an interest of the estate. There is in the report no mention whatever of any of the provisions of the will establishing the trust, or of any of the surrounding circumstances. The question apparently was presented to the court and decided simply as the usual question whether principal or income is entitled to a gain on sale of a principal asset, and this is borne out by examining the cases cited by counsel: Park's Estate, Leech's Appeal, 173 Pa. 190, and Graham's Estate, 198 Pa. 216 (discussed in Leech's Estate, supra). The question now before us was certainly not discussed in Neel's Estate, and does not seem to have been considered or raised at all; therefore that case is not deemed binding authority.

McDannel et al. v. Weddige, 79 Pa. Superior Ct. 494, is likewise not controlling, the distinction being obvious. That was not a case of a trust at all, but of an estate by curtesy arising from the life tenant's voluntary act of election. The court's decision is of course based primarily upon the Act of 1887, there involved, but also upon the general obligation of life tenants to pay taxes on real estate. In re Fleet's Estate, supra, and Spring, Trustee, v. Hollander et al., supra, have already illustrated the distinction between a cestui que trust and the holder of a legal life estate, a distinction which is sometimes lost sight of when both are referred to as "life tenants". There is no conflict whatever between Mc-

Dannel et al. v. Weddige, supra, and the conclusion reached on principle in this case.

These are the only cases which might bind our action here. Of the other Pennsylvania cases cited above, Simpson's Estate and Leech's Estate are easily distinguishable; Taheny's Estate is directly in point, but we disagree with its conclusion.

Dornan's Estate, the most recent, warrants further mention. The facts have been already stated sufficiently. While the real estate there involved was bought in on foreclosure, whereas here it was part of testator's estate at his death, exceptants call attention to Judge Gest's statement in Leech's Estate, at page 5:

"Nor do we see any distinction between real estate owned by the testator at the time of his death and real estate purchased by the trustee to protect an investment, whether the investment was one made by the testator himself or one made by the trustee after his death."

No more do we see any such distinction. The question, although arising at a different stage of the proceedings and under different circumstances, is closely related. It was there indicated that the life beneficiaries have such an interest in real estate taken by trustees on foreclosure of a trust mortgage as to entitle them, when the real estate is subsequently sold, to share in the proceeds in order to recoup lost income in whole or in part, depending upon the amount realized. It was also indicated that that interest exists even prior to an actual sale of the real estate, as the feature which caused Judge Van Dusen the principal difficulty was that the trust should be at an end, but, instead of an apportionable fund, he had only indivisible realty before him. If the life beneficiary, by virtue of his interest, is entitled to share in the fund when realized, it is but one logical and equitable step further to take the carrying charges out of principal as they accrue, instead of first taking them out of other income and then subsequently reimbursing income out of the proceeds of sale.

In Dornan's Estate, the life beneficiary had died. Somewhat belated justice obtained reimbursement for her estate, but that did her little actual good, as she suffered the loss of income while she lived. To postpone an adjustment between income and principal of the carrying charges of unproductive trust property until a fund is produced by sale may well, as there, deprive the life beneficiary of the enjoyment of what is due. To carry the unproductive property out of principal right along, while it does not leave the life beneficiary completely unaffected, since there will of course be a loss of income from the principal so consumed, nevertheless does bring the life beneficiary's misfortune to the irreducible minimum, and it furthermore does not change the net result to the remaindermen when they become entitled on the termination of the trust.

Again we return to the rule of section 233 of the A. L. I. Restatement of the Law of Trusts as the most equitable and expedient solution and a rule the application of which is not inconsistent with controlling authority. Accordingly, the exceptions are sustained; the entire credits claimed in the account under the heading "Real Estate 9—Whittaker Tract", but omitting the item of $4,299.42 for mortgage interest, which is not excepted to, are stricken out of income account, and all those credits, totaling $17,358.08, are transferred to principal account; the entire credits claimed in the account under the heading "Real Estate 10—Stenton Tract", insofar as they exceed the rents collected thereon, a total of $1,363.72, with which accountants charge themselves, are stricken out of income account, and the total of those credits, $29,660.02, is transferred to principal account. The transfer of these credits from income to principal now made is expressly subject to a final determination of their proper allocation to either principal or income, or apportionment to both, at such time when the two tracts of land involved shall have been sold.

From Aaron S. Swartz, Jr., Norristown.